REED (UNITED STATES v.). See Cases Nos. 16,134–16,136.

REED (VOSE v.). See Case No. 17,011.

REED (WILLIAMS v.). See Case No. 17,733.

REEDER (CRANE v.). See Case No. 3,356.

---

## Case No. 11,654.

REEDER v. The GEORGE'S CREEK.

[3 Hughes, 584;[1] 3 Am. Law Reg. 232.]

District Court, D. Maryland. Dec. Term, 1854.

MARITIME LIENS—FOR NECESSITIES—PRIOR MORTGAGE.

Liens founded upon the necessities of vessels in foreign ports are never displaced by mortgage-titles recorded in home ports.

[Cited in Srodes v. The Collier, Case No. 13,-272; The Raleigh, Id. 11,539; The General Burnside, 3 Fed. 231.]

Libel in rem by [Charles Reeder, Jr.] a materialman [against the steamship George's Creek] for repairs to ship.

This case was argued and submitted to the court upon the following statement of facts: The steamer George's Creek belongs to the port of New York, and on the 24th of December, 1853, she was mortgaged by her owners to Messrs. Knapp & Stacey, of New York, to secure the payment of $30,000. The said mortgage was duly recorded in the office of the collector of customs at the port of New York, in which office the said steamer was enrolled, and also in the office of the register of conveyances for the city of New York. Under the control and in the employment of her owners she made frequent trips

---

[1] [Reported by Hon. Robert W. Hughes, District Judge, and here reprinted by permission.]

to the port of Baltimore, and while here during the last summer certain repairs were made to her by the libellant at the request and by the direction of her captain, which repairs were necessary and proper to enable her to complete her voyage, and the prices charged for such repairs are at the usual and ordinary rates. This libel was filed on the 18th of October, 1854, and the steamer was taken under the process of this court, and released on stipulation. On the 16th of September, 1854, a bill was filed in the superior court of the city of New York by Messrs. Knapp & Stacey, to obtain a decree for the sale of said steamer for the payment of the said mortgage-debt, and on the 17th of October, 1854, a decree was passed for the sale of the said vessel, under which decree she has been sold in New York, since she returned; and the proceeds of sale were not sufficient to pay the said mortgage-claim.

GILES, District Judge. No question has been raised in the argument of this case in reference to the conflict of jurisdiction, but the court understands that to be waived, and the opinion of the court to be invoked, and the case to be put upon the question, "whether as against a prior mortgage of a vessel belonging to another state recorded according to the provisions of the act of congress of 29th of July, 1850 [9 Stat. 440], a materialman has a lien on the vessel for necessary supplies and repairs?" No decision upon this point has been cited to the court by either of the counsel, and the court has not been able, after diligent search, to find any. It is then a new question for the decision of the court, and must depend upon the construction which the court may give to the said act of 1850.

It is admitted in the argument of this case, that prior to the passage of the said act of congress materialmen had such a lien for repairs and supplies to a vessel belonging to another state which could be enforced in this court, and which no mortgage or sale of said vessel by the owners could interfere with or defeat. This arose from two principles of the general maritime law: 1st. Every contract of the master within the scope of his authority as master in reference to the vessel, binds the vessel; and 2d. A materialman who repairs or furnishes supplies to a ship obtains thereby, without any express contract to that effect, a lien on the ship for remuneration. The supreme court, however, in the case of The General Smith, 4 Wheat. [17 U. S.] 438, has restricted this last principle to the cases of foreign ships or ships in the ports of a state to which they do not belong. These principles were established by the general maritime law for wise and beneficial purposes. Ships, the subjects of them, were frequently in necessity of repairs and supplies in distant portions of the world where their owners were unknown, or without credit, and to enable them to pursue their voyages such a lien of which I have spoken became a necessity of the commercial world; and this, without any reference to the condition of their title at home. Nor does the act of 1850 do anything more than make bills of sale and mortgages of vessels, when recorded, as valid and good against all persons as they were before against the grantees and mortgagees, and all persons who had notice of them. Clearly before this act, whether a materialman had notice of a prior mortgage or not, it did not affect his lien. The mortgagee was only personally responsible for supplies and repairs, when in possession or in receipt of the profits of the voyage. But the materialman suffers no detriment from having no claim upon the mortgage. His original remedy remains to him. He may proceed against the mortgagor in personam or against the ship in rem. Now this is the law as laid down by Flanders in his late most excellent work on Shipping, a work published some three years after the passage of the act of 1850, and which act is given in one of the notes appended to said work. Certainly this intelligent writer did not consider the act of 1850 as changing the law in this particular. And I find the same general principle recognized without any exception in the first volume of Curtis's Commentaries on the Jurisdiction and Practice of the United States Courts (section 51), a work which went to press in August last, more than four years after the passage of the act of 1850. In the case of Weaver v. The S. G. Owens [Case No. 17,310], decided by Judge Grier in 1849, that learned judge remarks, "that no seizure by Buck under his supposed legal title as mortgagee would defeat or supersede any liens obtained by the libellants (who were materialmen) or others against the ship while in the possession of the Townsends." This was a case where the vessel had been sold by Buck to the Townsends, a part of the purchase-money only paid, and in the conveyance it was provided that if the balance of the purchase-money was not paid, the Townsends were to forfeit all claim of ownership on the vessel, "and the registry was not changed." The supplies were furnished while the ship was in the possession of the Townsends under this conditional sale. And in further illustration of this principle and of the reasons on which it rests, I will read a passage from the court's opinion in the case of Cole v. The Atlantic [Id. 2,976]. "The lien now sought to be enforced is given to the mechanic who furnishes work or materials to a vessel in a foreign port, which are necessary for the prosecution of her voyage. The policy of the law, as well as the principles of justice, regards this claim with high favor; and it does so, not more for the security of the mechanic than for the general interests of commerce and the particular interests of the shipowner. A vessel bound on a distant voyage with a valuable cargo meets with a disaster which prevents her proceeding with safety, although in itself it may not be of much account, and

may be repaired at a small expense. She puts into a port where her owner has neither funds nor credit, and unless the repairs can be made the voyage will be broken up. and both vessel and cargo exposed to a ruinous diminution of value. In this situation the law says to the mechanic, release this vessel from her distress, save her owner from this loss, and the vessel herself, wherever she goes, shall be security for your payment. There is some generosity in the confidence thus given to strangers, because it is not without considerable hazard. The vessel may be lost; her owner may be distant or insolvent; the mechanic, nevertheless, permits her to go; and the law will not suffer such a claim to be defeated on slight grounds, but will be astute to prevent it."

But the learned proctor for the claimants in this case contends that the proviso at the close of the 1st section of the act of 1850 makes the recorded mortgage prevail over every other lien, except that created by bottomry bond. Now can this be so, and, if so, would it not be most impolitic and unjust? A materialman who repairs a vessel or furnishes supplies to her in a foreign port, without a bottomry bond, gets only the usual interest on his bill, and has to follow the vessel frequently to her home port to recover his claim; and although her owners are liable to him in personam, if the vessel is lost on the voyage he has lost his principal security. But if he refuses to furnish the supplies or to lend money to repair without a bottomry bill, he gets a heavy rate of interest, sometimes as high as thirty per cent., if the vessel reaches her home port. And a bottomry bill, too, is only valid where the supplies furnished or money loaned were necessary to enable the vessel to prosecute her voyage. Now did congress mean to draw a distinction between these two liens, and to give to the one possessing the smaller claim to our favor the greater efficacy? I think not, but that it was only intended by the act of 1850 to give recorded bills of sale or mortgages of vessels priority over every subsequent conveyance of them made by those in possession of them, and over any rights acquired in them by general creditors by judgment and execution; and that it was not intended to interfere with those liens in favor of materialmen given by the general maritime law. Such a construction of the act is in accordance with the equitable principles which prevail in the maritime law, and enter so largely into the adjudications of the admiralty courts; for all repairs and supplies to vessels in a foreign port are directly for the benefit of the mortgagee, by enabling the vessel to prosecute her voyage, and return to her home port where she can be in reach of process to enforce his lien, and, by her return, adds to the means of the mortgagor to liquidate his mortgage-debt. Entertaining these views, I will sign a decree for the claim of the libellant with interest and costs.

And as this is a new question, and twenty-six other cases now pending in this court have been entered to abide the decision of this case, I have reduced my opinion to writing, and will file it in the case.

Since preparing my opinion in this case, I have been referred to a recent decision in the district court for Massachusetts as reported in the Boston Daily Advertiser of January 11th, in which Judge Sprague decides that "liens founded on the necessities of vessels abroad are never displaced by mortgage titles." See The Granite State [Case No. 5,687].

Decree for libellant.