## JOSEPH A. VEAZIE *vs.* GUSTAVUS A. SOMERBY.

A mortgage of personal property, conveying a list of articles used in and about a hotel, " together with all other goods, effects, furniture, chattels, property, things of every name and nature new used, attached, situate and being in or about the hotel," will embrace a schooner rigged sail boat, which is upon the water near the hotel, and used in connection with it, although four other schooner rigged sail boats are specially mentioned in the mortgage.

The *St.* of U. S. of 1850, c. 27, requiring conveyances of ships and vessels of the United States to be recorded by the collector of customs, applies only to ships and vessels which have been enrolled, registered or licensed under the laws of the United States.

The *St.* of 1851, *c.* 57, providing that it shall not be necessary to the validity of any mortgage of any ship or vessel, that the same shall be recorded by any city or town clerk, does not apply to a sail boat, of sixteen tons burden, kept and used in connection with a hotel, and which has not been enrolled, registered or licensed under the laws of the United States.

The residence of a mortgagor of personal property cannot be shown to be in a particular town, in an action by the mortgagee against an attorney at law to whom the mortgagor subsequently sold the property, by evidence that in various writs against him before the date of the mortgage he was described as of that town, and that the defendant appeared for him in the suits, and filed no plea in abatement on the ground that his residence was misdescribed.

If it becomes material to fix the residence of a mortgagor of personal property, in order to determine whether the mortgage has been duly recorded, in an action between the mortgagee and a claimant of the property under a bill of sale from the mortgagor, and the mortgagor has testified, in behalf of one party, that he always lived at the place described in the mortgage as the place of his residence, and the other party has been allowed to introduce evidence of a declaration by the mortgagor made at the time of executing the mortgage, that he had removed to a different town, no exception lies to the refusal of the court to allow the same party to prove a further statement by him, made at the same time, that it was not necessary to record the mortgage at the place from which he had removed.

In an action of replevin by the mortgagee against a claimant of property under a purchase, no exception lies to the admission of evidence, in behalf of the latter, that the oral bargain for the sale to him was completed before the execution of the mortgage, although he took a bill of sale of the same subsequently to the execution of the mortgage.

In an action of replevin of property against a claimant of the same under a purchase, the defendant may show the amount of expenditures made by him in improving the property, after the same came into his possession, for the purpose of proving his damages.

If, in serving a writ of replevin of a sail boat, the officer has also taken the furniture on board of her, which belonged to the defendant, and has removed it to another town, evidence is incompetent to show that at the appraisal, several days after the taking, he offered to return the same to the defendant's agent, without the defendant's knowledge.

As against a subsequent *bona fide* purchaser, no title passes by an oral sale, without delivery, of a boat moored upon the water.

REPLEVIN of a " schooner rigged sail boat, otherwise called a yacht," now known by the name of the J. G. Abbott. The plaintiff claimed title under a mortgage executed to him on the 15th of October 1858 by Timothy Tufts, who was described in the mortgage as of Somerville, in the county of Middlesex and Commonwealth of Massachusetts. This mortgage described a long list of furniture and other articles used in and about the " Ocean House " at Chelsea beach, amongst which were " four schooner rigged sail boats," and the enumeration concluded with the following general clause: " together with all other goods, effects, furniture, chattels, property, things of every name and

24 *

nature, now used, attached, situate and being in or about the hotel known as the Ocean House," &c. The defences relied upon were : 1. A denial that the sail boat replevied was included in the plaintiff's mortgage. 2. A denial that the mortgage was ever recorded in the town where the mortgagor lived. 3. A claim of title under a sale by Tufts to the defendant.

At the trial in the superior court, before *Brigham*, J., it was admitted that the mortgage was executed, and on the 18th of October 1858 recorded by the town clerk of the town of North Chelsea, and that it was never recorded by the town clerk of Somerville, or at the custom house. It also appeared that Tufts kept the hotel known as the Ocean House during the summer and fall of 1858; and the boat replevied, which was of fifteen or sixteen tons burden, and had never been enrolled, registered or licensed, was at the hotel and used in connection with it during that time, and was there at the time of the execution of the mortgage. There was also evidence tending to show that there had been at the hotel, and used in connection with it, four other schooner rigged sail boats belonging to Tufts, and the defendant contended that these last were the ones mentioned in and covered by the mortgage.

The defendant, who was a counsellor at law, introduced evidence tending to show that he held a claim against Tufts for professional services, and that he had been negotiating for some time for the purchase of the boat, to be taken in payment of his claim ; and on the 22d of September 1858 he went to Chelsea beach, and went on board of her, Tufts not being there, and within a few days afterwards concluded the bargain with Tufts ; and afterwards, on the 10th of December, he went there again and took a bill of sale of her, which was put into the case, and thereupon removed her to South Boston. Both Tufts and the defendant were allowed to testify, under objection, that the bargain was completed in September.

The evidence was conflicting as to whether Tufts lived at Somerville or at North Chelsea at the time when the mortgage was given. Tufts himself, being called as a witness by the defendant, testified that he always lived at Somerville. The

plaintiff offered in evidence the writs in various suits against Tufts, brought before the execution of the mortgage, in some of which he was described as of North Chelsea, and in others as of Chelsea, with proof that the defendant appeared as the counsel of Tufts in these cases, and that no plea in abatement was filed in any of them on the ground that the residence of Tufts was misdescribed; but the evidence was excluded.

The plaintiff also offered to prove that Tufts, at the time of giving the mortgage, told the plaintiff's agent 'that it was not necessary to record it at Somerville, as he had gone down to North Chelsea to live. The judge admitted the evidence of where Tufts said he lived, but excluded that portion of his statement as to the place of recording the mortgage.

The defendant was allowed, under objection, to testify to the amount of his expenditures upon the boat after she came into his possession.

The writ of replevin was served at South Boston, and the boat, with the furniture then in her, was taken by the officer to Chelsea beach. Three days afterwards she was brought back, to be appraised. The defendant testified to the cost of this furniture. The plaintiff then offered to show that, at the time of the appraisal, the officer offered to give up the furniture to the defendant's agent, who declined to receive it; but the judge excluded the evidence. There was no offer to prove that this was known to the defendant.

The plaintiff requested the court to instruct the jury: 1. That if the property replevied was a vessel of the description and tonnage testified to, it was not necessary, in order to make the mortgage valid, that it should be recorded by any city or town clerk. 2. That even if there were four schooner rigged sail boats belonging to Tufts at the time he made the mortgage, besides the boat replevied, yet if the boat replevied was, at the date of the mortgage and before, used, attached and situated in or about the hotel, the concluding part of the schedule attached to the mortgage would embrace it, and it would be conveyed by the mortgage, unless the boat had been previously sold to the defendant. 3. The plaintiff also, in case the court declined

to give the second instruction asked for, requested the court to give that instruction with this proviso, viz. provided the mortgage was recorded as prescribed by law. 4. The plaintiff also asked the court to instruct the jury that if the defendant did tell said Tufts, when he met him in September, that he would accept his offer, and Tufts then agreed to it, no title to the boat would thereby pass to the defendant, unless there was some conveyance in writing, or a delivery of the boat, or a payment, and that the mere oral agreement of the defendant to discharge the indebtedness of Tufts to him would not constitute a payment.

The judge declined to give any of the instructions asked for, but ruled that " the mortgage would not be valid against the defendant, unless recorded by the clerk of the town in which said Tufts resided at the time when the mortgage was made, and by the clerk of the town in which said Tufts then principally transacted his business; and left it to the jury to find the fact, upon all the evidence on both sides, whether the boat was or was not one of the four schooner rigged sail boats described in the mortgage. The judge also ruled that if the jury were satisfied that the defendant rendered to said Tufts an account of his professional services, and subsequently met said Tufts in September and accepted Tufts' offer, and orally discharged his claim against Tufts for services, and the defendant and Tufts, at that time, orally agreed that the boat should be the defendant's, the title to the boat would thereby then pass to the defendant as against the plaintiff, although there was no delivery of the boat, and nothing in writing; and the judge also ruled that such oral discharge of the indebtedness would constitute a payment."

The jury returned a verdict for the defendant, with $337.20 damages; and the plaintiff alleged exceptions.

*J. D. Ball & W. L. Burt*, for the plaintiff.

*J. G. Abbott & G. A. Somerby*, for the defendant.

DEWEY, J. Upon the question of the construction of the mortgage, and what property was embraced therein, the court are of opinion that if the boat replevied was, at the date of the

mortgage and previously thereto, used in connection with, attached to, and situated about the hotel known as the Ocean House, it would, under the general clause in the description of "all other goods, effects, furniture, chattels, property, things of every name and nature, now used, attached, situate and being in or about the hotel," &c., have passed by the mortgage, provided the mortgage was duly recorded. And this would be so, although there were four schooner rigged sail boats besides the boat replevied, belonging to the mortgagor at the time he made the mortgage. The language clearly indicates the purpose to cover the whole of the personal chattels attached to the Ocean House, or situated about the same. It was competent thus to describe the property. *Harding* v. *Coburn*, 12 Met. 333. And the plaintiff was entitled to a ruling to that effect.

The next inquiry is as to the necessity of recording this mortgage. Was it necessary to record it in the office of the collector of customs? The *St.* of U. S. of 1850, *c.* 27, requiring conveyances of ships and vessels of the United States to be recorded by the collector of customs where such vessel is enrolled or registered, does not apply to this vessel. The earlier *St.* of 1792, *c.* 1, had declared what ships and vessels shall be deemed vessels of the United States. It confines this class of vessels to those ships or vessels that may have been or shall be registered by virtue of existing laws of the United States, and no other vessels are to be so considered, "except such as shall be duly qualified according to law for carrying on the coasting trade and fisheries, or one of them." This vessel was neither registered, enrolled nor licensed, and was not within the class of vessels in relation to which any conveyance or transfer of title must be recorded in the office of the collector of the customs. This mortgage was not therefore within the *St.* of U. S. of 1850, *c.* 27, and the omission to record it in the office of the collector of customs did not invalidate it.

Did the statutes of this commonwealth require this mortgage to be recorded in the office of the town clerk of the town where the mortgagor resided? By the provisions of Rev. Sts. *c.* 74, § 5, as regards third persons, such recording is absolutely required

in all cases of mortgages of personal property. By *St.* 1843, *c.* 72, § 2, an additional record of the mortgage is required in the town where the mortgagor principally transacts his business, if he resides in one town and carries on his business in another. These statutes are imperative, and the court sanction no exceptions to the letter of them.

If this mortgage was not so recorded, the omission is fatal to the validity of the same, as against the defendant, unless this boat shall be found to be exempted from the provisions of the statutes just cited, by force of *St.* of 1851, *c.* 57, wherein it is enacted that "it shall not be necessary to the validity of any mortgage, contract of bottomry or respondentia, or any transfer, assignment or hypothecation of any ship or vessel, that the same shall be recorded by any city or town clerk."

On the part of the plaintiff it is insisted that the exemption of ships and vessels is in the broadest terms, and justifies the omission to record a mortgage of this vessel.

The precise question here arising is, whether *St.* 1851, *c.* 57, was intended to apply to a boat like that which is the subject of the present action, and which is described in the writ as "a schooner rigged sail boat, otherwise called a yacht," and which was in fact a boat connected with a hotel, and for the use of the same and of its visitors.

In view of the course of legislation upon this subject, we are not satisfied that *St.* 1851, *c.* 57, requires the broad construction contended for, and one which, if adopted, would except every pleasure yacht and every sail boat on any of our inland waters from the operation of our registry law as to mortgages of personal property. On the other hand, we perceive sufficient reasons for supposing that this statute had a direct and immediate connection with the *St.* of U. S. of 1850, *c.* 27, and that it was especially adopted as applicable to those ships and vessels which had by virtue of that statute been required to be recorded in the office of the collector of customs in the district in which the same had been registered or enrolled.

The statute of the United States having made provision as to the recording of all conveyances of any such ships, the

continuance of our statute might have been deemed inexpedient, if not improper, in relation to " vessels of the United States," so called.

Without, however, expressing any opinion beyond what is required in the present case, the court are of opinion that a yacht of the character of the one in controversy, kept and owned for the purposes described, and not registered, enrolled or licensed under the laws of the United States, was subject to the provisions of the Rev. Sts. *c.* 74, § 5, and *St.* 1843, *c.* 72, and that a mortgage of the same was required to be recorded in the office of the town clerk of the town in which the mortgagor resided, and in which he principally transacted his business ; and that *St.* 1851, *c.* 57, has not repealed those provisions in reference to vessels of that description and character, kept for uses like those of the one in controversy.

The next inquiry is, was it thus recorded ? It was recorded in the town of North Chelsea on the 22d of October 1858, but was not recorded in Somerville. If Somerville was the place of residence of the mortgagor, then this mortgage was inoperative for want of proper record. It appears from the bill of exceptions that there was evidence tending to show that the mortgagor lived in Somerville, and also other evidence tending to show that he resided in North Chelsea. Upon the issue as to the place of residence of the mortgagor, and as tending to show that he resided in North Chelsea, the plaintiff offered copies of various writs sued out against said Tufts, in some of which he was described as of North Chelsea, and in others as of Chelsea, and on these processes the said Somerby was retained as counsel ; and the plaintiff proposed to show that there was never any plea in abatement filed on the part of the defendant, on account of a misdescription of the place of residence. This evidence was properly rejected, as incompetent between the present parties for the purpose of showing the fact as to the actual residence of the mortgagor. Nor are they to be taken as admissions of Tufts, as to the proper description of his place of residence, except foi the purposes of those particular suits.

No exception lies to the ruling of the court as to the conver‑ sation between Tufts and the plaintiff's agent, in reference to the place of recording the mortgage. All that was material and proper was the evidence which was admitted, that Tufts said " he had gone down to North Chelsea to live."

The oral evidence of the progress of the negotiations for the sale of the boat, and the time when the bargain was agreed upon by the parties, was competent, notwithstanding the taking of the bill of sale on the 10th of December 1858.

Upon the subject of damages, the court properly admitted evidence of the improvements and expenditures made upon the boat by the defendant after his alleged purchase and before the service of the writ of replevin.

The court properly excluded the evidence offered in rebuttal, that, at the time when the boat was appraised, the officer who replevied the boat offered to give up to the person who had been the boat-keeper the furniture on board of her, and that the latter declined to receive it. It appeared that the boat and furniture had already been in possession of the officer for the space of three days, and had been taken to Chelsea beach from South Boston, and afterwards brought back to South Boston; and there was no evidence that the defendant had any knowl‑ edge of any offer to return said furniture. Under these circum‑ stances, the defendant had the right to hold the plaintiff respon‑ sible in damages, as well for his loss in the deprivation of the furniture as the boat.

Assuming the verdict to have been rendered in favor of the defendant upon the issue that this mortgage was not recorded in the town where the mortgagor resided, the title of the mort‑ gagee, as it would seem, must wholly fail, and it would be unne‑ cessary to consider another ground of exception to the instruc‑ tions. We allude to the instruction substantially to the effect that if the defendant, having an account against Tufts for pro‑ fessional services to an amount exceeding the value of the boat, then due and ascertained, agreed with Tufts to buy the boat at his proposed price, and then orally discharged his ac‑ count against Tufts, and Tufts agreed that the boat should be

the defendant's, such discharge of the indebtedness of Tufts upon the account would in law be a valid payment for the boat, and the boat would thereby pass to the plaintiff, although it was not at the moment in their view, and no actual delivery of the same was then made.

If, however, the case is to be considered under the other aspect, that of a title by a mortgage of this boat duly recorded on the 22d of October 1858, and the question between the parties is merely which of two *bona fide* purchasers has the better title, the inquiry would then arise as to what acts would be required to vest the title in the defendant, as against a subsequent purchaser, and whether, as applicable to such a case, the instructions were correct.

As respects the vendor himself, and as respects any mere stranger controverting the title of the defendant, the ruling as to what was sufficient to pass the property to the defendant was correct. But under the decisions of this court, as applied to a question of title arising between a prior and subsequent *bona fide* purchaser, it would be otherwise, so far as the matter of delivery of the property was concerned. We cannot consider this boat as a vessel on a voyage at sea, incapable of present delivery, or as embraced in that class of cases where, from the nature of the property, no actual delivery is required. There was nothing in the circumstances of this case to prevent a delivery of the possession of this boat by the vendor to the vendee. Something further than the acts stated in the instructions was therefore necessary to be shown to vest the title in the defendant against a subsequent *bona fide* purchaser. In such case it would be necessary for the defendant to show that he had perfected his title by having an actual delivery to him, or what was an equivalent thereto. *Lanfear* v. *Sumner*, 17 Mass. 110. *Parsons* v. *Dickinson*, 11 Pick. 352. *Packard* v. *Wood*, 4 Gray, 307.

As already remarked, if the plaintiff fails to establish his title by reason of his omission to record the mortgage to him, then the instructions would be correct as given. The case was however submitted to the jury upon two distinct issues, either of which, if found for the defendant, required the verdict to be

returned in his favor. As to one of these, viz: whether the mortgage was recorded in the place of the residence of the mortgagor, we have found no reason for sustaining the exceptions to the ruling and instructions of the court. Had the verdict been returned solely upon that ground, and that fact was made apparent by the record, judgment might have been entered upon the verdict. But the defendant equally relied upon another ground of defence, namely, that this boat was not embraced in the mortgage at all, and that for this reason the plaintiff had no case, irrespective of the question of the recording the mortgage, and the court left it to the jury to find the fact upon all the evidence, whether the boat was or was not one of the four schooner rigged sail boats particularly named in the mortgage. If the jury found it was not one of those four boats, they would upon that ground find a verdict for the defendant. But that issue was put to the jury under erroneous instructions, or an omission to give the proper instructions, as has been already stated. The true question to be put to the jury, as to whether this boat was embraced in the mortgage, was not the limited one stated to them, but the broader inquiry based upon the whole description of property, including the general clause.

*Exceptions sustained.*