## Case No. 7,109.

### The ISLAND CITY.

[1 Lowell, 375.] [1]

District Court, D. Massachusetts. July, 1869.

[1] [Reported by Hon. John Lowell, LL. D., District Judge, and here reprinted by permission.]

R. H. Dana, Jr., for mortgagees.

C. G. Thomas, N. Morse, G. W. Park, L. S. Danney, M. E. Ingalls, J. B. Richardson, H. E. Morse, W. W. Burrage, and Allen & Long, for the several petitioners.

LOWELL, District Judge. I cannot uphold any of the petitions excepting those for wages, on the footing of maritime liens, though many of them are declared on as such. The equitable owner, with whom most of the contracts for labor and materials were made, lived here, and the courts look to the real facts and the actual credit in a case of this kind. Thus if a ship is held out as foreign, and is with good reason believed to be so by persons dealing with the master, the courts will hold her to have been foreign. The St. Jago de Cuba, 9 Wheat. [22 U. S.] 409. And if the equitable owner is the person dealt with, and he lives in the home port, the vessel is, for the purposes of a lien, treated as domestic. Weaver v. The S. G. Owens [Case No. 17,310]. The latter case is in point here. Colonel Foote engaged these materials and services, and they were not of a nature to be needed by a foreign vessel to enable her to finish a voyage, or to reach her home, but were alterations and reconstructions intended to adapt her to a new use. This being so, those petitioners and those only who come within the benefits of the Massachusetts statute, and who have complied with its terms, have liens upon her, if that law is within the competency of the state to enact.

The recent decisions of the supreme court which deny the power of the states to create or enforce liens for collision, &c., are founded on the proposition that by the constitution admiralty jurisdiction is exclusively given to the courts of the United States. The Moses Taylor, 4 Wall. [71 U. S.] 411; The Hine, Id. 555. As the same court has of late refused to admit that contracts for building, repairing, and supplying domestic vessels are maritime contracts, it follows that such matters are not within the prohibition. I speak not now of supplies for a voyage, which are maritime, and might be enforced in the admiralty were it not for a comparatively recent rule of the supreme court, but of repairs and supplies to a vessel while lying in her home port to receive alterations and fit her for a new employment. The state seems to have as much right to impress a lien on such a vessel for such a service as upon a house built within its borders. Rightly construed, the law of the state begins where the maritime law ends, and supplements it for the benefit of the citizens of the state. See The Belfast, 7 Wall. [74 U. S.] 624, 646. I hold, therefore, that those of the petitioners who have judgments of the state court in their favor hold valid liens for the same.

I must apply the same rule to those who had taken all the necessary steps to record and perfect their liens, but who were prevented from enforcing them in the state court by the sale of the ship under the warrant of this court. The sale passed a clear title, but the admiralty court transfers all lawful liens to the proceeds. The state law, which is found in Gen. St. c. 151, §§ 12–20, declares that the lien shall last until the debt is satisfied; and none of those debts have been satisfied.

I cannot give any remedy to the petitioner Clancy. He says he was master of the vessel, as well as clerk and general agent of the owner; but he was appointed after the original libel was filed, and after the owner must have seen that he could not pay his debts and take his vessel to sea again. To call the petitioner master under such circumstances, when his duty was only to look after the suit, is in effect a device for giving him pay out of the property which belonged to the creditors. I am not ready to admit that a lien can be created in that way, pendente lite. See The Gazelle [Case No. 5,289]. I do not reject his petition because he was master, for, by the law of the flag, the master has a lien on the vessel, and seamen have a right to invoke the law of the flag. The Havana [Id. 6,226]. Seamen stand very differently from material-men, and are protected by their flag.

Nor has Holden a lien; he was a shipkeeper, and made himself useful in taking care of the machinery, &c. The contract with such a person has been decided not to be maritime. Phillips v. The Thomas Scattergood [Case No. 11,106]; Weaver v. The S. G. Owens, ubi supra. I do not fully agree with those judgments in their application to a foreign vessel, but in such a case as this they are sound.

Another of the petitioners, Norton, agreed to furnish sails, and made but never delivered them, choosing not to renounce his common-law lien. I do not think he comes within the purview of the statute of the state as one who has "furnished" materials in the repair of the steamer. He agreed to furnish sails, but never furnished them. His suit, if he should bring one, could not be for goods sold and delivered, but only for damages for not accepting, or for goods bargained and sold. It seems to me he must rely on his rights at common law, as the marshal did not take the sails.

Whether the petitioner, Maynard, who is a shipwright, had a lien by the statute, would not be material, because the ship was taken from his yard and dock by the marshal, and he certainly had a lien at common law, which this court is bound to respect. The *Gustaf*, Lush. 506. No doubt he has a lien by the statute too, and I see no reason for putting him on any different footing from the other material-men. If the law of Massachusetts gave him a priority it would hold good against the proceeds, but none is set up, and I have not examined the question.

The small sums due for mariners' wages are to be paid first, because they take precedence by their nature, and because section 12 of the statute expressly recognizes their priority. That section prefers the statute liens to all others excepting for wages, and it seems to follow that the mortgage must be postponed to those liens which I have found to be valid. It is a hard case for the mortgagees, but I see no help for it.[2]

There remains, however, the point which has been argued with much zeal and learning, that the mortgagees are the only persons who have any standing in court, and that I have no power to do any thing with this fund excepting to order it to be paid over to them. To this argument I cannot yield my assent. It is true that the admiralty has no jurisdiction of any of these liens because they are not maritime. It is equally true that it has none to foreclose or deal in any way with a mortgage. The John Jay, 17 How. [58 U. S.] 401. The mortgagees call themselves claimants; but their rights are not changed by their pleadings. They are no more claimants than the other petitioners are. They all represent the owner, in a sense, because they put forward rights which they have derived from him, but those rights must be satisfied in the order of their priority. None of them appeared until after the vessel was sold, and they are, therefore, technically speaking, petitioners, and not claimants, the mortgagees included. I have no jurisdiction of an original libel by any of the parties now before me except the seamen; but I have jurisdiction to pay a fund in the registry to the person to whom it is pledged, if he makes due demand for it. No court is so humble as to be obliged to take the property of A. and give it to B. And indeed such a transaction would show rather an excess of jurisdiction than the want of it. The argument, as I have said, if sound, would end the case of the mortgagees with the rest, but it is not sound. When a ship has been sold the admiralty court has jurisdiction to distribute the proceeds. The Angelique, 19 How. [60 U. S.] 239. It is not a question of admiralty jurisdiction, but of the power of a court to deal justly with a fund in its registry. On the day this case was argued I ordered the moiety of a fine which had been recovered by indictment in the name of the United States, to be paid to the informer. I had no jurisdiction, nor had any other court, of a suit by the informer against the United States; but I had the jurisdiction which all courts have to deal with a fund in the registry according to the rights of those whose property has been converted into money by the order of the court, or who have, for any other reason, a lawful interest in the fund. I should be glad to save the parties the expense of an assessor by auditing their several demands, did not the pressure of imperative duties make it impossible.

Order: That the seamen's wages be paid in full; that the remaining sum be paid to or divided among the holders of those liens hereinbefore pronounced valid pro rata. If more remains, that it be paid to the mortgagees. An assessor to audit the accounts unless the parties agree.

---

[2] So held since this opinion was given in Donnell v. The Starlight, 103 Mass. 227.