## THE DE SMET.*

(*Circuit Court, E. D. Louisiana.* December 29, 1881.)

1. RANK OF LIENS AND MORTGAGES UPON VESSELS—REV. ST. § 4192—ADMIRALTY RULE No. 12.

Section 4192 of the Revised Statutes, relative to the recording of conveyances and mortgages on vessels, gives no lien or other priority to mortgages and conveyances than they had before the act was passed, except to recorded conveyances and mortgages, over mortgages and conveyances not recorded, in certain cases. It affects mortgages and conveyances of vessels as the various registry acts of the states affect conveyances and mortgages of lands. And as, prior to this recording law, liens, whether maritime or domestic, under the maritime law or under the state law, had priority over mortgages, so now they should have priority.

*The John T. Moore*, 3 Woods, 61, criticised.

2. SAME—STARE DECISIS.

But frequent decisions in the fifth circuit having held the contrary, the doctrine of *stare decisis* must govern in this case, and it is now *held*, in conformity therewith, that "the lien of a mortgage on a vessel, duly recorded according to section 4192, Rev. St., is inferior to all strictly maritime liens, but is superior to any subsequent lien for supplies furnished in the home port, given by state legislation."

*Baldwin* v. *The Bradish Johnson*, 3 Woods, 582, followed.

In Admiralty.

*Chas. B. Singleton* and *R. H. Brown*, for mortgagee.

*Richard De Gray, Chas. S. Rice, Henry I. Leroy, E. B. Kouttschnidt, J. H. Kennard, W. W. Howe*, and *S. S. Prentiss, contra*, for various creditors of the boat.

PARDEE, C. J. The question presented in this case is as to the priority of certain lienholders on funds (proceeds of the sale of the De Smet) in the registry of the court. The appellee claims the funds under a mortgage duly recorded according to the act of congress in that behalf, and bearing date of January 24, 1880. The appellants claim under liens and privileges granted the furnishers of supplies and material-men in the home port by the laws of the state of Louisiana, some of prior and some of later date than the mortgage of appellee. Since the adoption of the constitution of Louisiana, of 1879, such liens and privileges do not require to be recorded in order to rank prior mortgages, or to be valid against third persons. See article 177, Const. La. 1879. And the twelfth admiralty rule has not been changed since 1872. So that the questions upon which the *Lottawanna Case*, 21 Wall. 580, was decided cannot be made in this case,

*Reported by Joseph P. Hornor, Esq., of the New Orleans bar.

and we are without any decision of the supreme court to guide us in the matter. The decisions of the various circuit and district courts reported, in which the precise question of this case has been answered, are very numerous, and as conflicting as the testimony of witnesses in a collision case. In this circuit, the rule followed by the district judge in this case, in favor of the recorded mortgage, has prevailed since 1877. It may, therefore, be set down as an open question, in the country at large, to remain so until the supreme court shall finally settle it.

The whole question seems to turn upon the effect to be given to section 4192 of the Revised Statutes of the United States, which declares that—

"No bill of sale, mortgage, hypothecation, or conveyance of any vessel or part of any vessel, of the United States, shall be valid against any person other than the grantor or mortgagor, his heirs and devisees, and persons having actual notice thereof, unless such bill of sale, mortgage, hypothecation, or conveyance is recorded in the office of the collector of the customs where such vessel is registered or enrolled. The lien by bottomry on any vessel, created during her voyage, by a loan of money, or materials necessary to repair or enable her to prosecute a voyage, shall not, however, lose its priority, or be in any way affected by the provisions of this section."

The question is, does this section create a lien in favor of a mortgage recorded according to its provisions? The language of the section is in the negative form. If put in the affirmative form, on the theory of its creating liens or granting rights, then the following three propositions comprise the whole substance, as far as said section declares liens or rank of liens:

(1) Bottomry liens, etc., shall not be affected by recordation or non-recordation.

(2) A recorded conveyance or mortgage, etc., shall be valid against all persons.

(3) An unrecorded conveyance or mortgage shall be valid against the grantor or mortgagor, his heirs and devisees, and persons having actual notice.

It ought to follow, then, that if this section gives a lien to recorded mortgages, it gives one also, though of a limited scope, to unrecorded mortgages. And as liens created by congress are superior in rank to state liens, it follows that an unrecorded mortgage has priority over state liens.

Again, considering from the lien hypothesis, the lien given by section 4192 to a recorded mortgage ranks the lien given by state laws to material-men. The lien given to material-men by state laws

ranks unrecorded mortgages, which latter have no United States lien. An unrecorded mortgage ranks a recorded mortgage when the holder of the latter has actual notice of the unrecorded mortgage.

Now let us take a case where there is an unrecorded mortgage, a subsequent recorded mortgage, where the mortgagee and holder has actual notice of the first mortgage, and a lien, under the state law, for a material-man; and this is the actual state of facts in the case of *The John T. Moore*, 3 Woods, 61. In that case, Judge Woods, who maintains that section 4192 gives a lien to a recorded mortgage, says:

"This fact of notice gives the mortgage to Swift's Iron & Steel Works and Long (unrecorded) precedence over the mortgage (recorded) of John T. Moore & Co., and entitles it to priority of payment over all the claims, even though, as between the mortgage to Swift's Iron & Steel Works and Long, and claims inferior to the mortgage of John T. Moore & Co., the latter would be entitled to priority if the mortgage of John T. Moore & Co. were out of the case."

It would seem to have been just as logical to have said: As the mortgage of John T. Moore & Co. was duly recorded, it has precedence over the lien given by the state law to W. G. Coyle & Co. for supplies, and is entitled to priority of payment over all the claims, even though, as between the mortgage of John T. Moore & Co. and claims inferior to the state lien, the latter would be entitled to priority were the state lien to Coyle & Co. out of the case. Or to have said: As the state lien given to Coyle & Co. has precedence over the unrecorded mortgage of the Swift Iron Works, it is entitled to priority of payment over all the claims, even though, as between the state lien to Coyle & Co. and claims inferior to the Swift Iron Works mortgage, the latter would be entitled to priority were the mortgage to the Swift Iron Works out of the case.

It is true that Judge Woods follows two Ohio cases, *Brazee* v. *Lancaster Bank*, 14 Ohio, 318, and *Holliday* v. *Franklin Bank of Columbus*, 16 Ohio, 533, but there, where the controversy was between judgment liens and mortgages, the court arbitrarily cut the knot by deciding that each lien should prevail according to its age. That Ohio court says:

"The first-named proposition is known to the profession as the triangular question," and "if it be attempted to settle the question on the principle of superiority, it runs in a circle and produces no result."

And it is also true that if the dilemma exists as Judge Woods found it in the *John T. Moore Case*, his method of extrication, following the Ohio cases, may be right; but a construction of a statute

that produces such results should be avoided if possible. But there is a further inconsistency resulting from the construction claimed, and it is shown also in the *John T. Moore Case.* This decision, which declares that the law of congress that—

"No bill of sale, mortgage, hypothecation, or conveyance of any vessel, or part of any vessel, of the United States, *shall be valid* against any person other than the grantor or mortgagor, his heirs and devisees, and persons having actual notice thereof, unless such bill of sale, mortgage, hypothecation, or conveyance is recorded in the *office of the collector of customs* where such vessel is registered or enrolled," etc.

—Is valid and must be enforced, concludes by actually enforcing an unrecorded mortgage of a vessel against third persons without notice, in the direct face of the statute, for it gives priority to an unrecorded mortgage over lienholders without notice.

And there is another consideration. If the said section 4192 gives a lien to recorded mortgages, recorded according to its provisions, does it not give a lien, if not an absolute title, to conveyances recorded according to its provisions? And under it cannot a devisee, by a duly-recorded conveyance, deny all supplies and materials furnished the boat in the home port, and in that way defeat the state lien entirely?

As to the admiralty rules of the supreme court which control proceedings in admiralty, referred to, it is true they affect remedies and not rights. Yet under the twelfth rule, as it existed prior to 1859 and as it now is, a lien under the local law for materials and supplies may be enforced in admiralty by proceedings *in rem.* Is it possible that after such a lien is enforced a mortgage creditor, who has no standing in court but for remnants, can step in and receive all the proceeds? And if the act of congress gives a lien to a mortgage recorded according to its provisions, what is the rank of that lien? Who can say that it is not a better lien than subsequent admitted maritime liens?

It seems that the theory of a lien being given by section 4192 to a recorded mortgage is destructive of all principles in regard to liens, whether maritime or domestic. Liens are founded on necessity; "to give credit to the ship;" "to furnish wings and legs;" and "because ships are built to plow the seas and not to rot at wharves."

The foregoing considerations, and the arguments presented in the many cases bearing on this question that I have examined, drive me to the conclusion that the said section 4192, in relation to the recordation of conveyances and mortgages on ships, gives no lien or other

priority to mortgages and conveyances than they had before the act was passed, except to recorded conveyances and mortgages over mortgages and conveyances not recorded in certain cases. It affects mortgages and conveyances on ships as the various registry acts of the states affect conveyances and mortgages of lands and chattels; as a registration law affects the rights of voters. In other words, it gives no new rights; it preserves rights already acquired. It is a law that requires owners and mortgagees of ships to advertise their claims; to give notice (constructive) to all the world of their demands; but in a conflict of rights the owner must stand on his conveyance, the mortgagee on his mortgage. And as, prior to this recording law, liens, whether maritime or domestic, under the maritime law or under the state law, had priority over mortgages, so now they have priority. These being my views of the law applicable, my duty in the premises as to the proper judgment to render in this case would seem plain.

·But there is another and a very important matter to consider. The rule that has been adopted, and has prevailed for some years in this judicial circuit, is at variance with my views and conclusions.

My learned predecessor, who now occupies a seat on the supreme bench and holds the highest judicial position in this circuit, established and doubtless still maintains the rule that mortgages duly recorded in pursuance of the act of congress are entitled to priority over domestic liens of subsequent date granted by the state law. I do not refer to the *John T. Moore Case*, reported in 3 Woods, 61, for I do not dispute the correctness of the judgment in that case, though I have criticised it somewhat herein. But in the *Bradish Johnson Case*, reported in the same volume, page 582, the rule is clearly laid down, and its propriety is maintained with the learning and force so characteristic of that eminent judge. Since that decision—1877—the rule there laid down has been the law in this circuit. The eminent admiralty judges in this circuit, notably in Mississippi and this state, have indorsed the decision, and followed it in determining the rights of parties in many cases, and I am now confronted with *stare decisis.* Upon this, Chancellor Kent says, (1 Kent, Comm. 475:)

"If a decision has been made upon solemn argument and mature deliberation, the presumption is in favor of its correctness; and the community have a right to regard it as a just declaration or exposition of the law, and to regulate their actions and contracts by it. It would, therefore, be extremely inconvenient to the public if precedents were not duly regarded and implicitly followed. * * * If judicial decisions were to be lightly disregarded we

should disturb and unsetttle the great landmarks of property. When a rule has been once deliberately adopted and declared it ought not to be disturbed unless by a court of appeal or review, and never by the same court, except for very cogent reasons, and upon a clear manifestation of error; and if the practice were otherwise it would be leaving us in a state of perplexing uncertainty as to the law."

And upon *stare decisis* Judge Cooley says, (see Const. Lim. 51 :)

" The doctrine of *stare decisis*, however, is only applicable, in its full force, within the territorial jurisdiction of the courts making the decisions, since there alone can such decisions be regarded as having established any rules."

And further :

" It will, of course, sometimes happen that a court will find a former decision so unfounded in law, so unreasonable in its deductions, or so mischievous in its consequences, as to feel compelled to disregard it. Before doing so, however, it will be well to consider whether the point involved is such as to have become a rule of property, so that titles have been acquired in reliance upon it, and vested rights will be disturbed by any change; for, in such a case, it may be better the correction of the error be left to the legislature, which can control its action so as to make it prospective only, and thus prevent unjust consequences."

There can be no doubt that, since the *Bradish Johnson Case*, if not before that time, business men in this circuit have had the right to consider the rule laid down in that case as the law of this circuit, and no doubt many rights have been acquired under such view of the law.

In argument, the opposite doctrine has been most ably maintained, and I have been eloquently urged to recognize the true principles that ought to prevail, and thus settle the rule in this circuit on a firm foundation; but, unfortunately, my views tend to unsettle, rather than settle, the rule; and, were I to give them full effect, no one in this circuit could tell whether domestic lien or mortgage were better until he ascertained whether the circuit justice or the circuit judge would try his case on appeal.

My duty, then, is to subordinate my views to those of the learned circuit justice, and follow the doctrine of *stare decisis*, leaving to the court of appeal or review, as suggested by Kent, or the legislature, as suggested by Cooley, the business of correcting the error, if any there be.

The judgment of the district court, then, should be affirmed.

Let a decree in proper terms, and to that effect, be entered, with costs against appellants.

## NOTE.

The fundamental principle of the maritime law is that a ship is made to plow the sea, and not to rot by the wall, and its chief object, both in the creation of maritime liens and the determination of their priority with respect to each other, so far as contracts are concerned, is to give the ship credit in whatever port she may be. A maritime lien is allowed merely to afford the means of procuring necessary services, supplies, or materials in a port where they cannot be obtained on the personal responsibility of the master or owner. It is manifest that this policy of giving credit to the ship requires that the lien shall attach to the whole ship and not to a part of it, and bind all the interests that then center in the ship, whether proprietary or in the nature of prior liens.(a) A maritime lien, however, may arise from a tort as well as from a contract. The principle of the maritime law in regard to marine torts is that the ship is regarded as the offender, and as such is liable to the party grieved, and in order that his remedy may be efficient he is allowed a lien, not merely on the interest of the owner, but on the entire ship.(b) There is, therefore, no difference between a lien arising from a tort and a lien arising from a contract. In either case the lien from its very nature binds the ship and all prior interests therein, for that is the essential character of a maritime lien. It attaches to the *res* itself, and not to the interest of any particular person in the *res*. Hence a maritime lien is entitled to priority over an antecedent maritime lien, and if the ship is insufficient to meet all the liens, they are paid in the inverse order of their creation.(c)

A few examples will illustrate the proposition and make it clearer. A lien for salvage is commonly said to take rank prior to all other liens, because the salvage service is usually the last rendered to the ship, and the efficient cause of preserving the interests of all other claimants; but it is postponed to a lien for services(d) or materials(e) rendered or supplied after the salvage. It is commonly said that seamen are the favorites of a court of admiralty, and that their wages are nailed to the last plank of the ship; yet their lien for wages due at the time of a collision is postponed to a lien for damages arising from the collision.(f) As between different bottomry bonds, the last bond is entitled to priority over an antecedent bond.(g) A maritime lien for repairs is entitled to priority over an antecedent bottomry bond.(h) As between material-men, those who furnish materials at a later stage of the voyage are entitled to priority over those who furnished materials at an earlier stage of the voyage.(i) As between two parties who sustain a loss by collision at differ-

(a) The Hope, 1 Asp. M. L. Cas. 563; S. C. 28 L. T. (N. S.) 287; The America, 16 Law Rep. 264; The Globe, 2 Blatchf. 427.

(b) The America, 16 Law Rep. 264; The Frank G. Fowler, 8 Fed. Rep. 331.

(c) The Hope, 1 Asp. M. L. Cas. 563; S. C. 28 L. T. (N. S.) 287; The Athenian, 3 Fed. Rep. 248.

(d) The Selina, 2 Notes of Cases, 18; Dalstrom v. The E. M. Davidson, 1 Fed. Rep. 259.

(e) Collins v. The Fort Wayne, 1 Bond, 476.

(f) The Enterprise, 1 Lowell, 455; The Linda Flor, Swab. 309; The Benares, 7 Notes of Cases, Supp. 53.

(g) The Sydney Cove, 2 Dod. 1; Furniss v. The Magoun, Olc. 55; The Constancia, 4 Notes of Cases, 285; S. C. 10 Jur. 845.

(h) The Jerusalem, 2 Gall. 345.

(i) The Omer, 2 Hughes, 96; Hatton v. The Melita, 3 Hughes, 494.

ent times, the one whose loss happened last is entitled to priority over the one whose loss happened first.(j)

The reason for the rule that maritime liens are entitled to priority in the inverse order in which they attach, is that in the case of contracts the benefit rendered at the latest hour preserves the *res* to satisfy the earlier claims, and thereby earns a superior equity in respect to the common fund. It is manifest that cases which are not within the reason of the rule are not within the rule, and in determining whether the rule applies or not, time is not the only element to be considered.(k) There are several well-established cases where classes of lienholders, as between themselves, share *pari passu*; as, for instance, seamen who ship for the same voyage, salvors who are engaged in the same salvage service, men who furnish materials(l) or supplies(m) for the same voyage, freighters who claim under bills of lading for the same voyage,(n) holders of bottomry bonds who act in concert with each other in making advances for repairs at the same time and place,(o) and parties who sustain a loss by the same collision.(p) These cases show that the rule contemplates not merely the date but the voyage. Mere subsequence in time does not give a right to priority of payment, unless one lienholder has been more efficacious than the other in preserving the ship and bringing it to its final destination.

This equality of payment in certain cases has made it convenient to divide maritime liens into classes which are said to have a certain rank of privilege. When the liens all hold the same rank, if the property is not sufficient to pay all in full, they are paid concurrently, each in proportion to its amount.(q) When the liens hold different ranks, then those which occupy the first rank must be paid in full before any allowance can be made to those which hold an inferior grade.(r) A careful consideration of this division of liens into classes will show that it is founded in part upon the stage of the voyage at which the service is rendered, and in part upon the efficiency of the service to speed the ship on its course. Some maritime liens, considered by themselves, hold the same privilege,—as, for instance, pilotage, towage, and liens for materials; but because one is necessarily rendered at a later stage of the voyage than the other, it is entitled to priority over the other.(s) Other maritime liens, which are allowed for other reasons than that of giving credit to the ship,—such, for instance, as the lien of freighters(t) or insurers,(u)—have no tendency to expedite the voyage or preserve the ship, and therefore take a low rank. An examination of the various classes of maritime liens, and the relative rank held by each, will illustrate these principles and show how they are applied to the ever-varying phases of litigation.

COSTS. The costs of the libellant in prosecuting the suit so as to obtain a condemnation and sale of the ship are entitled to priority over all other claims,

(j) The Frank G. Fowler, 8 Fed. Rep. 331.

(k) The William T. Graves, 14 Blatchf. 189; S. C. 8 Ben. 368.

(l) The America, 16 Law Rep. 264; The Fanny, 2 Low. 508; The Superior, Newb. 176.

(m) The William F. Safford, Lush. 69.

(n) The Paragon, 1 Ware, 322.

(o) The Exeter, 1 C. Rob. 173; The Constancia, 4 Notes of Cases, 285; S. C. 10 Jur. 845.

(p) The Desdemona, Swab. 158.

(q) The Paragon, 1 Ware, 322; The Superior, Newb. 176.

(r) The Paragon, 1 Ware, 322; The Superior, Newb. 176.

(s) Porter v. The Sea Witch, 3 Woods, 75; The City of Tawas, 3 Fed. Rep. 170.

(t) The Unadilla, 2 Mich. Law, 441.

(u) The Dolphin, 1 Flippin, 580.

for the suit is the means by which the ship is converted into money, and all persons who intervene to claim the proceeds are not equitably entitled to any more than the balance that remains after paying the expenses of the suit.(v) Parties who file intervening petitions are not entitled to have their costs paid out of the fund, when the liens which outrank them are sufficient to absorb it. The rule, therefore, is that the costs of the libellant are paid first, then the liens which are entitled to priority, then the costs of the intervening petitioner, who stands next in rank, then the liens which are next in rank, and so on; the intervening petitioner who holds the lowest rank not being entitled to his costs until all the liens and costs incident thereto which outrank him have been fully paid.(w) If in any case the whole proceeds of the sale are not sufficient to pay the costs of the libellant, then they must be divided among all the officers *pro rata*, for all the expenses of justice naturally stand in the same rank.(x)

SALVAGE. Salvage is entitled to priority over all antecedent liens on the ship, for it is a service by which all prior rights are saved. Hence, it outranks the lien of seamen for wages earned before the rendition of the salvage service.(y) But if the seamen, instead of abandoning the ship, stay by it, and aid in saving whatever is saved, then they are entitled to priority over the salvors; for the salvage service rendered by them gives efficacy to their claim for wages, and nails their lien to the last plank.(z) If seamen render services after a salvage service, their lien for such subsequent wages has priority over the lien for salvage.(a) If a party furnishes materials to,(b) or takes a bottomry bond on,(c) the ship after the rendition of salvage service, he is for the same reason entitled to priority over the salvage.

SEAMEN'S WAGES. Seamen are commonly called the wards of the admiralty, and their claims for wages are carefully and zealously protected on account of their poverty and the hardships they endure. Their lien for their wages for the current voyage is entitled to priority over all antecedent liens, and all liens incurred during the voyage, except salvage, because their labor preserves the common pledge for the benefit of all. Inasmuch as they bring the ship to its final destination, their lien is the last to attach, and therefore for that reason the first to be paid. It takes priority over the antecedent liens of materialmen,(d) freighters,(e) holders of bottomry bonds,(f) holders of claims for tow-

(v) The Paragon, 1 Ware, 322; The John T. Moore, 3 Woods, 61; The Kate Hinchman, 6 Biss. 367; The Rodney, Bl. & H. 226; The Fanny, 2 Low. 508; Goble v. The Delos De Wolf. 3 Fed. Rep. 236; The City of Tawas, 3 Fed. Rep. 170; The Panthea, 25 L. T. (N. S.) 389; S. C. 1 Asp. M. L. Cas. 133.

(w) The Rodney, Bl. & H. 221; The Kate Hinchman, 6 Biss. 367; Goble v. The Delos De Wolf, 3 Fed. Rep. 236.

(x) The Phebe, 1 Ware, 354.

(y) The Selina, 2 Notes of Cases, 18; The Panthea, 1 Asp. M. L. Cas, 133; S. C. 25 L. T. (N. S.) 389; The Gustav, Lush. 506; The Sabina, 7 Jur. 182; The Athenian, 3 Fed. Rep. 248; Collins v. The Fort Wayne, 1 Bond, 476.

(z) Dalstrom v. The E. M. Davidson, 1 Fed. Rep. 259.

(a) The Selina, 2 Notes of Cases, 18.

(b) Collins v. The Fort Wayne, 1 Bond, 476.

(c) The Selina, 2 Notes of Cases, 18.

(d) The Superior, Newb. 176; The America, Id 195; The Rodney, 1 Bl. & H 226; Goble v. The Delos De Wolf, 3 Fed. Rep. 236; Logan v. The Æolian, 1 Bond, 267; Collins v. The Fort Wayne, Id. 476; Hatton v. The Melita, 3 Hughes, 494.

(e) The Paragon, 1 Ware, 322; Hatton v. The Melita, 3 Hughes, 494; The Leonidas, Olc. 12.

(f) The Virgin, 8 Pet. 538; The Hilarity, 1 Bl. & H. 90; The Madonna D'Idra, 1 Dod. 37; The Favorite, 2 C. Rob. 232; Furniss v. The Magoun, Olc. 55; The Kammerhevie Rosenkrantz, 1 Hagg. 62; The William F. Safford, Lush. 69.

age,(g) mortgagees,(h) claimants for damages arising from a collision,(i) and a consignee claiming for disbursements made for light money, pilotage, and port duties.(j)   The phrase "current voyage" means the voyage for which the seamen ship, so that if it consists of several parts, as, for instance, an outward and a homeward voyage, the lien for wages earned in any part of the voyage is entitled to priority over a lien incurred in a later state of the voyage.(k) The rule which limits the priority of seamen to wages for the current voyage is not deemed to be applicable to coasting voyages, or voyages on the lakes, where the trips are short, and the seamen are engaged not for a determinate voyage, but for an indefinite time, or some limited period.   In such cases the right to priority is extended to what is called the season instead of the voyage.(l)

PILOTAGE, TOWAGE, AND WHARFAGE.   So far as mere rank is concerned, claims for pilotage, towage, and wharfage hold the same rank as claims for necessary materials and supplies.(m)   They are, therefore, entitled to priority over antecedent claims for supplies(n) and repairs(o) and antecedent bottomry bonds.(p)   As between claims for services rendered at different dates, the last in point of time is entitled to priority over those that are first.(q)

MATERIALS AND SUPPLIES.   The lien for necessary materials or supplies is entitled to priority over antecedent claims for salvage,(r) antecedent bottomry bonds,(s) and an antecedent claim for disbursements for light money, pilotage, towage, and port duties.(t)   When they are furnished at the same time and place for the same voyage, they share *pari passu.*(u)   On the lakes the custom seems to be established to treat those that are furnished during the same season as if they were furnished for the same voyage.(v)   But in general those that are furnished at the latest stage of the voyage are entitled to priority over those that are furnished at an earlier stage.(w)

BOTTOMRY BONDS.   A bottomry bond is entitled to priority over an antecedent lien for salvage(x) or supplies(y) or a collision,(z) an antecedent mortgage,(a) and the lien of a freighter whose goods have been sold and the proceeds applied to make repairs on the ship.(b)   As between different bottomry

(g) The City of Tawas, 3 Fed. Rep. 170; The Athenian, Id. 248.

(h) The City of Tawas, 3 Fed. Rep. 170; The John T. Moore, Woods, 61; Miller v. The Alice Getty, 9 C. L. N. 315; The Island City, 1 Low. 375.

(i) Rusk v. The Freestone, 2 Bond, 234; The America, 16 Law. Rep. 264.

(j) The Rodney, 1 Bl. & H. 226; The St. Lawrence, 5 Prob. Div. 250.

(k) The Sidney Cove, 2 Dod. 13; The Union, Lush. 128; The America, 16 Law Rep. 264; The Louisa Bertha, 1 Eng. L. & Eq. 665; Vide The Mary Ann, 9 Jur. 94; The Janet Wilson, Swab. 261.

(l) The Paragon, 1 Ware, 322; The City of Tawas, 3 Fed. Rep. 170; The America, 16 Law Rep. 264.

(m) Porter v. The Sea Witch, 3 Woods, 75; The City of Tawas, 3 Fed. Rep. 170; The St. Lawrence, 5 Prob. Div. 250.

(n) Porter v. The Sea Witch, 3 Woods, 75; The Wexford, 7 Fed. Rep. 674.

(o) The Island of Tawas, 3 Fed. Rep. 170.

(p) The St. Lawrence, 5 Prob. Div. 250.

(q) The Athenian, 3 Fed. Rep. 248.

(r) Collins v. The Fort Wayne, 1 Bond, 476.

(s) The Jerusalem, 2 Gall. 345.

(t) The Rodney, 1 Bl. & H. 226.

(u) The William F. Safford, Lush. 69; The Fanny, 2 Low. 508.

(v) The Superior, Newb. 176; The America, 16 Law Rep. 264; Collins v. The Fort Wayne, 1 Bond, 476; The City of Tawas, 3 Fed. Rep. 170; The Athenian, Id. 248.

(w) The Fanny, 2 Low. 508; The Omer, 2 Hughes, 96; The Melita, 3 Hughes, 494.

(x) The Selina, 2 Notes of Cases, 86.

(y) The William F. Safford, Lush. 69.

(z) The Aline, 1 W. Rob. 111.

(a) Furniss v. The Magoun, Olc. 12; The Mary, 1 Paine, 671; The Duke of Bedford, 2 Hagg. 294.

(b) The Constancia, 4 Notes of Cases, 285; S. C. 10 Jur. 845.

bonds the last is entitled to priority over the first.(c) This principle applies even as between different bonds executed at the same place and for the same voyage, if the last was needed to complete repairs begun with the money raised under the first.(d) But it is not entitled to such priority unless it was executed under the pressure of a necessity,(e) and the right may be lost if there is an agreement to postpone the payment until after the termination of a subsequent voyage.(f) If several parties act in privity and concert with each other at the same place to make advances for the same repairs, then the bottomry bonds taken by them are entitled to share *pro rata*, although they bear different dates.(g)

COLLISION. So far as mere rank is concerned, the lien for damages arising from a collision holds the same rank as a lien for necessary supplies or material,(h) and is entitled to priority over antecedent liens existing at the time when the damage was done. It therefore takes precedence of an antecedent lien for seamen's wages,(i) or necessary materials or supplies,(j) an antecedent bottomry bond,(k) an antecedent mortgage,(l) and a lien for an antecedent collision.(m) Like other maritime liens it is outranked by a subsequent lien for seamen's wages,(n) or a subsequent bottomry bond.(o)

FREIGHTERS. The lien arising from a contract of affreightment holds a rank inferior to that of other maritime liens incurred during the voyage, such as towage and necessary repairs, because they are incurred for the direct benefit and preservation of the ship itself,(p) but it is entitled to priority over maritime liens incurred during a previous voyage,(q) for in this respect it has that quality which is characteristic of all maritime liens. If the goods of a freighter are sold during the voyage in order to procure necessary supplies or repairs, then his lien is entitled to priority over all antecedent liens, whether they consist of mortgages,(r) bottomry bonds,(s) or liens for necessary materials and supplies.(t)

INSURANCE. The lien of an insurer for unpaid premiums holds the lowest rank among maritime liens.(u)

SHIPWRIGHT. A shipwright may at common law detain the ship until his demand is paid. This right of detention is called a lien at common law. The characteristic of a lien at common law, as distinguished from a maritime lien, is that it is subject to all prior liens. Hence the lien of a shipwright at common law is postponed to all prior maritime liens, but is entitled to priority over all liens that accrue while the ship is in the yard, even though they are maritime.(v)

(c) The Sydney Cove, 2 Dod. 1; Furniss v. The Magoun, Olc. 55; The Constancia, 4 Notes of Cases, 285; S. C. 10 Jur. 845.

(d) The Betsey, 1 Dod. 289.

(e) The Rhadamanth, 1 Dod. 201.

(f) The Royal Arch, Swab. 269.

(g) The Exeter, 1 C. Rob. 173; The Constancia, 4 Notes of Cases, 285; S. C. 10 Jur. 845.

(h) The America, 16 Law Rep. 264.

(i) The Benares, 7 Notes of Cases, Supp. 53; The Duna, 13 Ir. Jur. 358; The Linda Flor, Swab. 309; The Enterprise, 1 Low. 455; Rusk v. The Freestone, 2 Bond, 231.

(j) The America, 16 Law Rep. 264; Rusk v. The Freestone, 2 Bond, 234.

(k) The Aline, 1 W. Rob. 111; Force v. The Pride of the Ocean, 3 Fed. Rep. 162.

(l) The Aline, 1 W. Rob. 111.

(m) The Frank G. Fowler, 8 Fed. Rep. 331.

(n) Rusk v. The Freestone, 2 Bond, 234.

(o) The Aline, 1 W. Rob. 111.

(p) The Unadilla, 2 Mich. Law, 441.

(q) Hatton v. The Melita, 3 Hughes, 391.

(r) Justi Pon v. The Arbusti, 6 A. L. Reg. 511; The E. M. McChesney, 8 Ben. 150.

(s) The Salacia, 32 L. J. Adm. 43.

(t) The Grapeshot, 2 Ben. 527.

(u) The Dolphin, 1 Flippin, 580. Vide the John T. Moore, 3 Wood. 61.

(v) The Gustav, Lush. 506.

LIENS UNDER STATE LAWS. A lien arising under a state law is postponed to all maritime liens, whether they accrue before or after the attaching of a lien under the state law, for no state has the power to interfere with, supersede, or destroy a lien that accrues under the maritime law.(*w*) When a lien arising under a state law is enforced in admiralty, it is enforced subject to all the qualifications and limitations imposed upon it by the state law. Hence, the relative rank of these liens with respect to each other depends upon the state law,(*x*) but the general tendency, in the absence of an express provision in the state law, is to allow them to share *pro rata*.(*y*)

MORTGAGES UNDER THE MARITIME LAW. A mortgage is a lien that derives it force, not from the maritime law, but from the contract of the parties, and depends for its efficacy upon the principles of the common law. Hence, like all other liens at common law, it is subject to all prior liens, whether they consist of liens for necessary materials or supplies,(*z*) or of bottomry bonds,(*a*) or of liens under state laws.(*b*) As soon as the mortgage is executed the mortgagee is ordinarily entitled to the possession of the ship. If he leaves it in the possession and control of the mortgagor, he thereby consents that it shall be subject to all liens which may be contracted or incurred by the mortgagor in the course of its employment. For the purpose of subjecting it to subsequent liens, the mortgagor is deemed to act with the consent and authority of the mortgagee. Hence the lien of the mortgage is postponed to subsequent liens, whether they consist of liens for salvage,(*c*) or seamen's wages,(*d*) or necessary supplies or materials,(*e*) or collisions,(*f*) or affreightments,(*g*) or bottomry bonds,(*h*) or the lien of a shipwright at common law,(*i*) or liens under state laws.(*j*)

MORTGAGE UNDER REGISTRATION ACTS. Section 4192 of the Revised Statutes of the United States is limited to vessels of the United States; hence it does not apply to vessels which have not been either registered or enrolled,(*k*)

(*w*) The Superior, Newb. 176; The St. Joseph, 1 Brown, Adm. 202; The Harrison, 2 Abb. C. C. 74; S. C. 1 Sawy. 353; The Favorite, 3 Sawy. 405; The City of Tawas, 3 Fed. Rep. 170; The John T. Moore, 3 Woods, 61; Scott's Case, 1 Abb. C. C. 336; The E. A. Barnard, 2 Fed. Rep. 712; The Athenian, 3 Fed. Rep. 248; Collins v. The Fort Wayne, 1 Ben. 476. Contra, The General Burnside, 3 F. d. Rep. 228; Goble v. The Delos De Wolf, 3 Fed. Rep. 236.

(*x*) Srodes v. The Collier, 9 Pitts'. Law J. 73, 193; The Fanny, 2 Low. 508.

(*y*) The Superior, Newb. 176; The Kate Hinc :- man, 6 Biss. 367; The Skylark, 2 Biss. 251; The E. A. Barnard, 2 Fed. Rep. 712.

(*z*) The Native, 14 Blatchf. 34.

(*a*) The Royal Arch, Swab. 269; The Helgoland, Swab. 491.

(*b*) Thorsen v. The J. B. Martin, 26 Wis. 488; Provost v. Wilcox, 17 Ohio, 359; The Harrison, 2 Abb. C. C. 74; S. C. 1 Sawy. 353; The Theodore Perry, 8 Cent. Law J. 191; The Favorite, 3 Sawy. 405. Vide Underwriters' Wreck ng Co. v. The Katie, 3 Woods, 182.

(*c*) The Dowthorpe, 2 W. Rob. 73.

(*d*) The City of Tawas, 3 Fed. Rep. 170; The John T. Moore, 3 Woods, 61; Miller v. The Alice Getty, 9 C. L. N. 315; The Island City, 1 Low. 375.

(*e*) The Emily Souder, 17 Wall. 666; The Acme, 7 Blatchf. 366; Thomas v. The Kosciusko, 11 N. Y. Leg. Obs. 38. Vide The Pacific, Brow. & L. 243; The Scio, L. R. 1 A. & E. 353.

(*f*) The Aline, 1 W. Rob. 111.

(*g*) The E. M. McChesney, 8 Ben. 150; Justi Pon v. The Arbuster, 6 A. L. Reg. 511.

(*h*) The Duke of Bedford, 2 Hagg. 294; Furniss v. The Magoun, Olc. 12; The Mary, 1 Paine, 671. Vide the Royal Arch, Swab. 269.

(*i*) The Acacia, 42 L. T. (N. S.) 264; Williams v. Allsup, 10 C. B. (N. S.) 417; Scott v. Delahunt, 65 N. Y. 128.

(*j*) Kellogg v. Brennan, 14 Ohio, 72; Provost v. Wilcox, 17 Ohio, 359; Donnell v. the Starlight, 103 Mass. 227; Jones v. Keen, 115 Mass. 170; The Hull of a New Ship, 2 Ware, 203.

(*k*) Thurber v. The Fannie, 8 Ben. 429; Best v. Staple, 61 N. Y. 71; Perkins v. Emerson, 59 Me. 319; Foster v. Perkins, 42 Me. 168; Hicks v. Williams, 17 Barb. 523; Veazie v. Somerby, 87 Mass. 280.

and the priority of conflicting liens on such vessels depends entirely on the state laws.(*l*) But if a vessel on which a mortgage is given while it is in the process of construction is subsequently registered or enrolled, and another mortgage given to a person who has no notice of the first, and who has his mortgage duly recorded at the custom-house, then the last mortgage is entitled to priority over the first.(*m*) If a mortgage of a vessel of the United States is recorded at the custom-house where the vessel is registered or enrolled, then it is valid as against a subsequent mortgage, although the mortgagee does not comply with the state laws relating to the registration of chattel mortgages; for the act of congress is paramount to and exclusive of state laws upon the same subject.(*n*) The mortgagee in such case is also entitled to priority over an antecedent mortgage which was not recorded at the custom-house where the vessel was registered or enrolled, although it was recorded at some other custom-house,(*o*) or pursuant to state laws,(*p*) unless he had actual notice thereof; but if he had actual notice thereof then his mortgage is postponed to the prior mortgage.(*q*)

The statute does not apply to liens created by state laws for supplies or repairs to domestic vessels, for it relates only to the registration of written instruments.(*r*) A mortgage of a vessel of the United States is, therefore, subject to prior liens under state laws of the state in which the custom-house is located at which the mortgage is recorded.(*s*) But if a vessel is removed into another state, after the attaching of the lien under the state laws, and there registered or enrolled, a mortgage duly recorded at the custom-house, in the state to which the vessel is so removed, is entitled to priority over the antecedent lien under the state law.(*t*) If the mortgagee allows the mortgagor to remain in possession of the vessel, then his mortgage, although it is duly recorded at the custom-house where the vessel is registered or enrolled, is postponed to liens subsequently incurred in the course of the employment of the vessel, whether they are maritime liens,(*u*) or the liens of a shipwright at common-law,(*v*) or liens under state laws;(*w*) for he is deemed to give his consent and authority to the incurring of such obligations as are usual in the course of the business in which the vessel is engaged.

(*l*) Foster v. Perkins, 42 Me. 168.

(*m*) Perkins v. Emerson, 59 Me. 319. Contra, Stimson v. Minor, 34 Ind. 89.

(*n*) White's Bank v. Smith, 7 Wall. 646; Aldrich v. Ætna Company, 8 Wall. 491; S. C. 26 N. Y. 92; Blanchard v. The Martha Washington, 1 Cliff. 463; Mitchell v. Steelman, 8 Cal. 363; Fontaine v. Beers, 19 Ala. 722; Robinson v. Rice, 3 Mich. 235.

(*o*) The John T. Moore, 3 Woods, 61; S. C. 100 U. S. 145.

(*p*) Foster v. Chamberlain, 41 Ala. 158; Thomas v. The Kosciusko, 11 N. Y. Leg. Obs. 38.

(*q*) Moore v. Simonds, 100 U. S. 145.

(*r*) Thorsen v. The J. B. Martin, 26 Wis. 488.

(*s*) The Harrison, 2 Abb. C. C. 74; S. C. 1 Sawy. 553; The Theodore Perry, 8 Cent. Law J. 191; The Favorite, 3 Sawy. 405.

(*t*) The Underwriters' Wrecking Co. v. The Katie, 3 Woods, 182.

(*u*) Reeder v. The Geor e Creek, 3 Hughes, 584; The Emily Souder, 17 Wall. 366; The Granite State, 1 Spr. 277; Scott's Case, 1 Abb. C. C. 336;

Baldwin v. The Bradish Johnson, 3 Woods, 582; Hatton v. The Melita, 3 Hughes, 494; The Josephine Spangler, 9 Fed. Rep. 777; Miller v. The Alice Getty, 9 C. L. N. 315; The Favorite, 3 Sawy. 405; The Hendrick Hudson, 17 Law Rep. 93; Zollinger v. The Emma. 3 Cent. Law J. 285.

(*v*) Marsh v. The Minnie, 6 A. L. Reg. 328; Scott v. Delahunt, 65 N. Y. 128.

(*w*) The Hiawatha, 5 Sawy. 160; The Wm. T. Graves, 14 Blatchf. 189; S. C. 8 Ben. 568; The Island City, 1 Low. 375; The Raleigh, 2 Hughes, 44; Srodes v. The Collier, 9 Pittsb. Law J. 73, 193; The St. Joseph, 1 Brown, Adm. 202; Miller v. The Alice Getty, 9 C. L. N. 315; Whittaker v. The J. A. Travis, 7 C. L. N. 275; The Canada, 7 Fed. Rep. 730; Goble v. The Delos De Wolf, 3 Fed. Rep. 236. Contra, Baldwin v. The Bradish Johnson, 3 Woods, 582; The John T. Moore, 3 Woods. 61; The Kate Hinchman, 6 Biss. 367; The Kate Hinchman, 7 Biss. 238; The Grace Greenwood, 2 Biss. 131; Scott's Case, 1 Abb. C. C. 336; The Josephine Spangler, 9 Fed. Rep 777.

MASTER'S LIEN.. Under the act of 17 & 18 Vict. c. 104, § 191, the master of a British ship has the same lien for his wages as a seaman. He is, by virtue of this statute, entitled to priority over an antecedent mortgage,(x) and a bottomry bond given during the voyage, if he is not bound personally.(y) But his lien for wages on one voyage is postponed to a bottomry bond given during a subsequent voyage.(z) If the master is liable personally for a debt, either as master or part owner, then his lien is postponed to the lien for that debt, whether it consists of a lien for seamen's wages,(a) or for necessary supplies or materials,(b) or for the services of a watchman,(c) or of a bottomry bond.(d)

WHEN CLAIMANT IS PART OWNER. If a person claiming a lien is personally liable for a debt as part owner, his lien is postponed to the lien for that debt.(e) If a ship-broker allows the ship to go into the possession of a shipwright, his claim is postponed to that of the shipwright.(f)

DILIGENCE. The last maritime lien is entitled to priority over an antecedent lien, although the earlier claimant could not, even by the use of reasonable diligence, have instituted a suit to enforce his lien before the later one attached.(g)

PRIORITY BY SUIT. The holder of a lien does not obtain any right to priority over other liens of an equal or a higher rank, although he is the first to file a libel or to obtain a decree; for the decree is considered to be so far under the control of the court that the proceeds arising from a sale of the ship may be distributed among those who have pending libels, or who file intervening petitions according to their respective rights.(h) But it is manifest, from the very nature of a proceeding in rem, that there must be some stage of the proceedings at which the proceeds will be deemed to be conclusively appropriated to the claims then filed, for such a proceeding is a proceeding against all persons having an interest in the res, and by failing to appear they tacitly assent to a decree which cuts off their interests and appropriates the proceeds to the payment of other demands. It has been held that no creditor can intervene after the filing of a report classifying the claims.(i)

LEX FORI. Whether one lien is entitled to priority over another depends upon the *lex fori*, and not upon the *lex loci contractus*.(j)

ORLANDO F. BUMP.

(x) The Chieftain, Brow. & L. 212; The Feronia, L. R. 2 A. & E. 65; The Mary Ann, L. R. 1 A. & E. 8; The Hope, 1 Asp. M. L. Cas. 563; S. C. 28 L. T. (N. S.) 287; The Wexford, 7 Fed. Rep. 674.

(y) The Salacia, Lush. 545.

(z) The Hope, 1 Asp. M. L. Cas. 563; S. C. 28 L. T. (N. S.) 287.

(a) The Salacia, Lush. 545.

(b) The Jenny Lind, L. R. 3 A. & E. 529; The Selah, 4 Sawy. 40; Hatton v. The Melita, 3 Hughes, 494; Covert v. The Wexford, 3 Fed. Rep. 577.

(c) The Erinagh, 7 Fed. Rep. 231.

(d) The William, Swab. 346; The Jonathan Goodhue, Swab. 524; The Edward Oliver, L. R. 1 A. & E. 37; The Eugenie, L. R. 4 A. & E. 123; The Daring, L. R. 2 A. & E. 260.

(e) Logan v. The Æolian, 1 Bond, 267; Petrie v. The Coal Bluff, 3 Fed. Rep. 531.

(f) The Panthea, 1 Asp. M. L. Cas. 133; S. C. 25 L. T. (N. S.) 389.

(g) The Frank G. Fowler, 8 Fed. Rep. 336. Vide Goble v. The Delos De Wolf, 3 Fed. Rep. 236.

(h) The America, 16 Law Rep. 264; The Fanny, 2 Low. 508; The E. A. Barnard, 2 Fed. Rep. 712; The Superior, Newb. 176; The City of Tawas, 3 Fed Rep. 170; The Desdemona, Swab. 158. Contra, The Saracen, 4 Notes of Cases, 498; S. C. 2 W. Rob. 451; S. C. 6 Moore, P. C. 56; The Clara, Swab. 1; The William F. Safford, Lush. 69; The Globe, 2 Blatchf. 427; The Triumph, 2 Blatchf. 433, note; Goble v. The Delos De Wolf, 3 Fed. Rep. 236; The Pathfinder, 4 W. N. 528.

(i) The City of Tawas, 3 Fed. Rep. 170.

(j) The Union, Lush. 128; The Selah, 4 Sawy. 40.