PETERSON *v.* THE NELLIE AND ANNIE.

(*District Court, E. D. Wisconsin.* January 7, 1889.)

MARITIME LIENS—SEAMAN'S WAGES.

Libelant had been employed by S., the master, for some time as a seaman. S., desiring to stop ashore for a few trips, accompanied libelant to the custom-house, where he caused him to be enrolled as master of the vessel, without the knowledge or consent of the owner. He made one trip as master, when S. again took command in fact of the vessel, though libelant's name continued on the enrollment as master. and he reported and cleared at the custom-house. *Held*, that libelant was entitled to a seaman's lien for services rendered, except during the trip he actually served as master.

In Admiralty.   Libel for wages.

*O. T. Williams,* for libelant.

*Mr. Krause* and *Mr. Wildish*, for claimants, etc.

JENKINS, J.   This case comes now before the court upon the objections to the payment of libelant's claim out of the proceeds of the sale of the vessel, covered into the registry of the court.   The facts upon which opposition to the claim is based are disclosed by the evidence of the libelant. In April, 1888, F. C. Seefluth was master of the vessel, and employed libelant as seaman, at $50 a month.   He continued in the service under that agreement one month, when the master reduced the pay to $1.50 per day.   He served as seaman under the changed agreement until the 8th day of June, when he left the service because of threatened further reduction of wages.   He remained idle until the 6th of July, when he was re-engaged by the master at $1.50 per day.   At this time the master informed him of his intention to stop ashore for two or three trips, and suggested that the libelant had better go on the papers as master. He accompanied the master to the custom-house, took the oath of citizenship, and was then rated on the vessel's enrollment as master.   He made one trip of six days as master; then Seefluth again took command in fact of the vessel, and remained in command until her seizure.   The libelant's name continued on the enrollment as master, and he reported and cleared at the custom-house; but Seefluth was in fact master, purchased cargoes, collected freight, and in all other respects commanded the vessel; the libelant performing seaman's services.

It is objected that the services were rendered as master, and no lien therefor exists upon the vessel or the proceeds in court.   Without respect to the registry laws, he would be master to whom the owner actually intrusted the navigation and discipline of the vessel.   The inquiry in such case is, what is the fact?   As Judge NIXON observes in *The Imogene M. Terry*, 19 Fed. Rep. 463, "Courts of admiralty deal with things, not words."   It cannot be questioned upon the evidence that the libelant, with the exception of the one trip, was in fact a seaman, and not the master.   Seefluth was in every respect the master, charged by the owner with all the duties and responsibilities of master.   What effect did

the transaction, with respect to the change upon the enrollment of the vessel, have upon the rights of the libelant? This change was made at the request of the master because he desired to stop ashore for a time. It does not appear to have been done by or with the knowledge or authority of the owner. It may be, as determined in *The Dubuque*, 2 Abb. (U. S.) 21, that, where there is a master *de jure* by virtue of the registry, there cannot be in contemplation of law another master *de facto*. It is there held that the registry conclusively determines the relations of owner, master, and crew. The case of *Draper* v. *Insurance Co.*, 21 N. Y. 378, is directly opposed. If the question was properly here for determination, it might be well to consider whether the penalties imposed by law for false enrollment should be extended by implication, so that, as between contending claimants, a seaman *de facto*, although entered upon the enrollment as master, should be deprived of his wages as seaman; whether an offense against the United States which may be satisfied by payment of a fine can be invoked by a stranger to work injustice. In *Badger* v. *Gutierez*, 111 U. S. 734, 737, 4 Sup. Ct. Rep. 563, the court holds that when a vessel or its owner becomes subject to a statutory penalty for taking out improper papers, that does not justify a collector of customs in withholding from the vessel the papers to which it is lawfully entitled. The court says that for the offense the law prescribed a penalty, payment of which might be exacted, and that "prosecution for that violation of the law stood on its own ground, and had its own penalty, which did not include a forfeiture or seizure of the papers of the vessel."

So, as to the case at bar, it might well be urged that, if the libelant by reason of his acquiescence in and active consent to the request of the master incurred a penalty for violation of a provision of law, that did not make him an outlaw, nor, as to the claimants, estop him from showing the actual relation he bore to the ship. If wrong there was, was it not a wrong done to the United States, not to the other claimants, or to their injury? It is not necessary, however, to determine that question here, for *The Dubuque* is expressly put upon the ground that one can only be the lawfully registered master by the act of the owner, which is not this case. Here, so far as the evidence discloses, the entry of the libelant's name upon the enrollment as master was at the request of and for the convenience of Seefluth, the master registered as such by the act of the owner. The change was made without the knowledge or consent of the owner, and was for a temporary purpose. In *The Exchange*, Bee, 198, the libelant, at the request of the real captain, lent his name to clear the vessel at the Havanna. It was held he was not captain in fact, and therefore not barred from suing for services. This case is referred to by Judge LONGYEAR in *The Dubuque*, who observes with respect to it that "the real master has no authority thus to divest himself of his office, and confer it upon another. This could be done by the owners only." Whatever object Seefluth had in causing or continuing the change in the registry, so far as the evidence discloses it, was without the knowledge or privity of the owner. Seefluth remained master in fact, with

the exception of the navigation of the vessel for one trip, receiving all moneys, and presumably accounting therefor to the owner. The latter so dealt with him, not with the libelant. The answer of the owner, after such dealing, and after seizure of the vessel, asserting that libelant was master, carries no weight.

It is urged that the libelant should not be permitted to recover, for the reason that by his action in registering as master he has held himself out to the world as such, and others have dealt with the vessel supposing him to be master, and entitled to no lien on the vessel for his services. Whether the laws for the enrollment of vessels can be considered in the light of the recording acts of the state need not be determined, because here nearly, if not all, of the demands against the vessel accrued before the transaction complained of. There is no suggestion that any supplies were furnished or services rendered at the request of the libelant, or upon the faith of his being master of the vessel. The libelant's claim will be allowed as the first lien upon the fund in the registry of the court. There must, however, be deducted from the claim the amount expended by him to the use of the vessel, and the amount of his services upon the trip he actually served as master.