## THE HATTIE THOMAS.

### POND v. THE HATTIE THOMAS.

#### (District Court, D. Connecticut. January 1, 1894.)

1. MARITIME LIENS—PERSON ACTING AS MASTER—WAGES.

   One to whom the navigation, discipline, and control of a vessel is intrusted must be considered as master, although another is registered as such; and if it does not appear that he contracted on the credit of the vessel, he is not entitled to a lien for his wages.

2. SAME—SERVICES IN HOME PORT—LAYING UP VESSEL.

   One who brings a vessel into her home port, and lays her up there,—i. e. anchors her out of the channel, pumps her out, dries her sails, sees to her fastenings, and renders other services usually performed by mariners,—is entitled to a lien for his compensation.

In Admiralty. Libel by Nelson Pond against the Hattie Thomas to recover wages. Decree for libelant.

Howard N. Wakeman, for libelant.
Henry G. Newton, for defendant.

TOWNSEND, District Judge.    This is a proceeding in rem for seaman's wages and services as keeper of the schooner Hattie Thomas, enrolled at New Haven, Conn.    The case was referred to a commissioner, and comes before the court upon exceptions to his report.

The material facts are as follows:    On or about November 13, 1891, one Alfred Thomas, master and managing owner of said schooner, was sick, and employed the libelant to take charge of her. The libelant made trips in her from Branford, Conn., to various places, until the latter part of December, 1891.    During this period he had the entire control of said vessel, securing freights, receiving and discharging cargoes, securing tows, collecting freight moneys, furnishing supplies for the vessel, hiring, discharging, and paying the seamen, having full authority to go anywhere he pleased, to take any load he could get, to run the vessel as he saw fit, and to do what he thought best with her.    Thomas was enrolled as master during all this time, but the libelant, on one or more occasions, signed his name as master.    Upon these facts the commissioner finds the sum of $22.82 due for said services as seaman's wages, provided the court shall find that the libelant during said period was a seaman, and, as such, entitled to a lien against said vessel.

It does not appear from the testimony of the libelant, or from the bill which he sent to Thomas, that his contract was upon the credit of the vessel.    It does appear that he had money passing through his hands which he might have retained in payment of his own wages, but that he expended it for other purposes, and looked to the personal responsibility of the owner for his compensation. Under these circumstances it seems to me that the libelant is not entitled to a lien.    The Imogene M. Terry, 19 Fed. 463; Peterson v. The Nellie and Annie, 37 Fed. 217; The Atlas, 42 Fed. 793; The Atlantic, 53 Fed. 607.    As is said in Peterson v. The Nellie and Annie, supra:

"Without respect to the registry laws, he would be master to whom the owner actually intrusted the navigation and discipline of the vessel.  The inquiry in each case is, what is the fact?  As Judge Nixon observes in The Imogene M. Terry, 19 Fed. 463: 'Courts of admiralty deal with things, not words.' "

And in said case the libelant was denied a lien for the trip during which he actually served as master.

The only question on this part of the case arises out of the fact that during the time the libelant acted as master he was not enrolled as master.    In The Dubuque, 2 Abb. (U. S.) 20, it is said that the enrollment is conclusive on the question.    Without questioning the correctness of the decision of the learned judge upon the peculiar facts of that case, it may be observed that the rights of the owner were not under consideration therein, and that the statement above referred to was an obiter dictum.    Courts of admiralty are not dis-

posed to apply the doctrine of estoppel against the claims of seamen. But in this case the libelant, having made a personal contract with the managing owner, under which he occupied the position and performed all the duties of a master, must be presumed to have contracted upon the credit of the owner, and cannot now claim the lien of a seaman. Peterson v. The Nellie and Annie, supra; The M. Vandercook, 24 Fed. 472.

After the completion of said trips the libelant entered into a new arrangement with said Thomas, under which, at his request, he brought said schooner into said Branford, and laid her up there, and took care of her for three months. He anchored her on the flats, swung her around to get her out of the channel, pumped her out, dried her sails, saw to her fastenings, and supervised her generally. In this care he was assisted at times by two other men and by his wife. For these services he charged, and the commissioner allowed him, $30. The claimant claims that these services were not maritime services, and, among other exceptions, excepts to the report of the commissioner allowing said claim as a lien against said vessel in her home port. This exception raises a difficult question, and one concerning which there has been much conflict of authority. The earlier decisions denied a lien for services such as those rendered by watchmen and stevedores upon either a foreign or domestic vessel while in port, because the services were not rendered by mariners, or were, for other reasons, not maritime in their nature, or concerned the cargo, and not the ship. The Amstel, Blatchf. & H. 215; The A. R. Dunlap, 1 Low. 350. In The George T. Kemp, 2 Low. 477; The Windermere, 2 Fed. 722; The Erinagh, 7 Fed. 231; The Hattie M. Bain, 20 Fed. 389; The Velox, 21 Fed. 479; The Scotia, 35 Fed. 916; The Gilbert Knapp, 37 Fed. 209; The Main, 2 C. C. A. 569, 51 Fed. 954, and Steamship Co. v. Washington, 57 Fed. 224,—it was held that such services were maritime, and created a lien against a foreign vessel. In The Maggie P., 32 Fed. 300, claims for liens for such services were sustained against a domestic vessel. See, also, The Henry Ames, (cited in The Wyoming, 36 Fed., at page 495.) In The Senator, 21 Fed. 191, such a lien was sustained, it not appearing whether the vessel was a foreign or domestic one, the court declaring that there was no difference between such services and those of sailors. In The Mattie May, 47 Fed. 69, such lien was sustained, but whether the vessel was at her home port is not stated. In Wishart v. The Joseph Nixon, 43 Fed. 926, where a statutory lien was sustained against a domestic vessel, the court considered two of the earlier cases, and distinguished them from the case before it. See, also, The Wyoming, 36 Fed. 493. In The America, 56 Fed. 1021, Judge Green, citing The E. A. Barnard, 2 Fed. 712, and The Island City, 1 Low. 375, holds that the services of a ship keeper or watchman on a barge lying in port are not maritime, and cannot be the basis of a maritime lien against a domestic vessel. It will thus be seen that the later decisions give a lien to stevedores, longshoremen, watchmen, and ship's keepers against foreign vessels, while the authorities are in conflict as to whether such lien exists against do-

mestic vessels. In some cases the question seems to have been determined by the maritime or nonmaritime character of the services; in others, by ascertaining whether the services were performed on the credit of the master or of the vessel.

I am unable to find any case where such lien has been denied under circumstances like those in the present case. The services for which the charge of $30 was made included bringing the schooner into the port of Branford, laying her up, moving her about, pumping her out, and drying her sails, in the expectation, warranted by the statements of the son of the master, that the schooner might shortly again start on her trips. Other services, it is true, were merely those of landsmen, but I do not think they should affect the right of the libelant to recover for such maritime services as would naturally be rendered only by a seaman. It seems to me that the principle deducible from the cases establishes that where services are rendered in the home port of the vessel the question whether there is an admiralty lien, irrespective of statute, depends largely upon whether the services are in the nature of repairs or supplies or other necessaries for the vessel, such as are furnished by material men, or are such in kind as would be rendered by a mariner. If they are of the latter character, it seems that they are of equal rank with those of other seamen, and constitute a lien against the vessel.

It is further important to inquire whether the services concern the cargo or freight or the vessel itself or her maritime duties, and, if the latter, whether they are connected with her navigation, present or prospective. Assuming these tests to be correct, and applying them to the case at bar, it will be found that the services rendered were such as to entitle the libelant to the lien of a seaman. This conclusion is supported by the learned and exhaustive discussion of the question by Judge Jenkins in The Gilbert Knapp, supra, where, in denying the lien of the stevedore, he distinguishes the duties incidental to the contract of carriage and delivery, from those of the seaman as connected with the navigation of the ship. This view of the case renders it unnecessary to consider in detail the other exceptions to the report. A careful examination of the testimony with especial reference to the questions most forcibly pressed upon the hearing has failed to show me any sufficient reason why the report should not be accepted, and it is therefore confirmed.

In view of the foregoing considerations, let a decree be entered for the libelant for $30 and one-half of the costs.