**Case No. 7,294.**

The JERUSALEM.

[2 Gall. 345.] [1]

Circuit Court. D. Massachusetts. May Term. 1815.

A. W. Fuller, for libellant.

[1] [Reported by John Gallison, Esq.]

STORY, Circuit Justice. The question here does not singly depend upon the right of the admiralty to entertain suits in favor of material men. If there be any persons, who doubt that jurisdiction, I beg not to be comprehended in the number. In my judgment, and I speak after having given the subject a very grave consideration, the admiralty has always rightfully possessed jurisdiction over all maritime contracts; and the decisions of the courts of common law, prohibiting its exercise, are neither consistent in themselves, nor reconcilable with principle. In the struggle between the courts of common law and the admiralty, which originated in the same spirit, that attempted to break down the whole system of equity. it cannot be denied, that the former have manifested a great degree of jealousy. and hostility, fostered by strong prejudice and a very imperfect knowledge of the subject. It is not, therefore. to be wondered at. that in such an unequal contest, where the power was all on one side,

the admiralty should have lost many of its inherent rights. In more modern times. when the jurisdiction of the admiralty has been better understood, a more liberal policy has been pursued, and, where they have not been fettered by authority, judges have been more indulgent in allowing its exercise. The true doctrine was always asserted by the learned judges of the admiralty, and has been recently recognized by Mr. Justice Buller; that the jurisdiction as to contracts depends not upon the locality, but upon the subject matter, of the contract. Menetone v. Gibbons, 3 Term R. 267. And I have not the slightest hesitation in holding, that the admiralty has perfect jurisdiction over all maritime contracts. The decisions at common law, on the subject of its jurisdiction, have nothing to recommend them, and certainly are not binding on us. The constitution and laws of the United States have confided to the courts of the United States cognizance of "all civil causes of admiralty and maritime jurisdiction." and what is the true limit of this jurisdiction must be judged of. not by hasty decisions upon prohibitions, but by the history, practice and law. of the admiralty. as it is found expounded, with admirable learning and sagacity, by the judges who have presided in that court.[2] In respect to material men. the jurisdiction has been enforced and exercised by Mr. Justice Winchester. than whom no man in the United States ever better understood the true principles and doctrine of the admiralty law. Stevens v. The Sandwich [Case No. 13,409]. Until I am taught a different rule by the highest tribunal, I shall continue to assert the original inherent powers of the admiralty in the full extent. in which they were recognised in England until the unhappy controversies with the courts of common law.

Admitting the jurisdiction, the next question is, whether the petitioner be entitled to the relief prayed for. This depends upon the consideration. whether he have a lien or not upon the ship for the repairs. It will be recollected that this is a foreign ship. and that. by the general maritime law. every contract of the master for repairs and supplies imports an hypothecation. It has been supposed, that the rule of the common law is different. But it has never yet been extended to cases of repairs of foreign ships, or of ships in foreign ports. I hold, therefore. that the contract for repairs in this case, being of a foreign ship, is to be governed by the maritime law, and created a lien.[3] Whether, in

[2] See Exton. Godolphin, Zouch. and Jenkins. on the admiralty jurisdiction. passim.

[3] The John, 3 C. Rob. Adm. 288; North v. The Eagle [Case No. 10,309]. The supreme court of the United States have recently held that material men have a lien on a foreign ship for repairs done. The Aurora. 1 Wheat. [14 U. S.] 96, 103; Hussey v. Christie. 13 Ves. 594; contra. Id.. 9 East. 426; Acc. Ex parte Halkett. 3 Ves. & B. 135; De Lovio v. Boit [Case No. 3,776]; 2 P. Wms. 367.

case of a domestic ship, material men have a lien for supplies and repairs furnished at the port where the owner resides, I give no opinion. There are great authorities on both sides of the question, though upon principle, independent of common law authorities, it does not seem to me, that there is much room for doubt. See Woodruff v. The Levi Dearborne [Case No. 17,988]; Stevens v. The Sandwich [Id. 13,409]; Gardner v. The New Jersey [Id. 5,233]; Hussey v. Christie, 9 East, 426; Abb. Shipp. pt. 2, c. 3, § 9, etc.; Rich v. Coe, Cowp. 636; Farmer v. Davies, 1 Term R. 109; The John, 3 C. Rob. Adm. 288; Pritchard v. The Lady Horatia [Case No. 11,438]. Be this as it may, it cannot affect the jurisdiction of the admiralty in such cases, for that stands altogether independent of the doctrine of liens, and may be enforced as well by process in personam, as in rem. If then the repairs in this case were a lien on the ship, it remains to consider, whether they constitute a privileged lien, entitled to a preference over a bottomry interest; for the proceeds now in court are insufficient to answer both claims. In point of time the bottomry interest first attached, and the right became absolute by a completion of the voyage, before the repairs were made. Upon general principles, then, the rule would seem to apply, "qui prior est tempore, potior est jure." But it is to be considered, that the repairs were indispensable for the security of the ship, and actually increased her value. They are, therefore, not like a dry lien by way of mortgage or other collateral title. The case is more analogous to that of a second bottomry bond, or the lien of seamen's wages, which have always been held to have a priority of claim, although posterior in time, to the first bottomry bond. Let a decree be entered for payment of the sum claimed by the petitioner out of the proceeds of the sale.

After the decree was pronounced, Mr. Fuller moved the court for a direction to the clerk, as to the costs to be taxed in this case.

BY THE COURT. In a case, like this, of a claim on proceeds in the custody of the court, where other parties are entitled, nothing can be allowed beyond that, for which there is a specific lien, and the actual charges of court. No attorney's fee can be allowed.