### THE J. W. TUCKER.

(*District Court, S. D. New York.* April 24, 1884.)

1. MARITIME LIENS—PRIORITY—ORDER OF PAYMENT—DEFICIENCY.
   Parties before the court, having different maritime liens of the same rank, are entitled to be paid, in case of deficiency, according to the equitable priority of the liens themselves, without reference to the first arrest of the vessel.

2. SAME—THE FRANK G. FOWLER, 17 FED. REP. 653, FOLLOWED.
   The former rule of this district, giving priority to the claim under which the vessel was first arrested, being based upon a view of maritime liens since discarded, and, being incompatible with the principles of the recent decision in this circuit in the case of *The Frank G. Fowler*, 17 FED. REP. 653, should no longer be adhered to.

3. SAME—PRESERVATION OR IMPROVEMENT OF VESSEL.
   Liens of the same rank, not concurrent, but which arise from the preservation or improvement of the vessel, are to be paid in the inverse order of their dates.

4. SAME—CONCURRENT LIENS.
   Concurrent liens, or such as in practice are treated as contemporaneous,—such as repairs or supplies in preparation for the same voyage,—are to be paid *pro rata*.

5. SAME—OTHER LIENS.
   Claims which are not concurrent, and not for the improvement or preservation of the ship, and not having in themselves any ground of equitable priority, are to be satisfied in the order of the dates at which they accrue. But the ordinary rule giving priority to beneficial liens of the same class in the inverse order of their dates, not being properly applicable to canal-boats and similar crafts making short trips during the open season of navigation, and laid up in the winter, *held* that the rule applied to navigation on the Great Lakes should be adopted, distributing the proceeds *pro rata* among all claimants of the same class during the same season.

6. SAME—LIEN FOR TOWAGE.
   Where two maritime liens were for towage services rendered to a canal-boat upon numerous trips from New York to ports on the Connecticut river and back, during the same period, from April to November, *held*, that the first libelant was not entitled to priority for the payment of his whole bill, by reason of his first arrest of the vessel; but that the proceeds of the vessel, after paying the first libelant's costs, should be applied *pro rata* upon the claims of each, without regard to the dates at which they accrued, all being during the the same season.

v.20,no.2—9

7. SAME—COSTS.
    Costs as against the fund not allowed, except upon the first libel filed and the other necessary disbursements. Claimants not appearing, if any, will be barred after order for the payment of the money out of the registry.

On December 12, 1883, the canal-boat J. W. Tucker was libeled in this court by David Cox, and in that proceeding she was subsequently sold. After satisfying the amount due on that libel with costs, the sum of $206.23 remained, which was deposited in the registry of the court. Prior to the sale the petitioner Stillman filed his libel against the boat on the twenty-seventh of December, 1883; and on the twenty-second day of January following, the petitioner Dentz filed her petition against the same; both claiming maritime liens on the boat and its proceeds. The claim of Stillman amounts to $398.90 for various towage services rendered to the canal-boat on the Connecticut river, between Saybrook, New Haven, Middletown, and Hartford, during each month from April 9, 1883, to November, 2, 1883. The claim of the petitioner Dentz is for a balance of $340 for towage services during each month from May to November 6, 1883, between Jersey City, Saybrook, and New Haven, or Greenpoint. The claims for towage services rendered by each were in the usual course of the business of the canal-boat upon her trips from Jersey City to the points upon the Connecticut river above named and back. The money in the registry being insufficient to pay the claim of either in full, the libelant Stillman claims the whole amount on the ground that the boat was first libeled and attached in his suit.

    *Benedict, Taft & Benedict,* for Stillman.

    *Jas. K. Hill, Wing & Shoudy,* for Dentz.

BROWN, J. The claim of the libelant Stillman presents in its simplest form the question whether, as between maritime liens of the same rank, priority is to be given to that on which the libel is first filed and the vessel first arrested, without regard to the dates at which the liens respectively accrued. Such was the rule declared in this district in the case of *The Triumph,* (1841,) 2 Blatchf. 433, note, and *The Globe,* Id. 433, (1852,) and which has been more or less followed since. The principle on which this rule was based, in the language of those cases, is that a maritime lien "is, in reality, only a privilege to arrest the vessel for a debt which, of itself, constitutes *no incumbrance* on the vessel, and becomes such only by virtue of an actual attachment." Upon this view of the nature of a maritime lien, it is obvious that the parties first attaching the vessel must necessarily have a prior right. But this view of the nature of maritime liens, which is the foundation of the rule in question, has long since been superseded. In the case of *The Young Mechanic,* 3 Ware, 85, WARE, J., defines it as "a *jus in re,* a proprietory interest in the thing, which may be enforced directly against the thing itself by a libel *in rem,* in whosesoever possession it may be, and to whomsoever the general title may be transferred." The subject was elaborately con-

sidered by CURTIS, J., on appeal in the same case, 2 Curt. 404. The definition of maritime liens, as stated by WARE, J., was affirmed, and the view of the nature of such liens, as expressed in the case of *The Triumph*, was shown to be unsound, (page 412.) The same view was affirmed in the following year (1856) by the supreme court, in the case of *The Yankee Blade*, 19 How. 82, 89, and has since then been universally recognized and followed. In the case of *The Lottawanna* the supreme court say, (21 Wall. 579:) "A lien is a right of property, and not a mere matter of procedure." WARE, J., in the case of *The Paragon*, 1 Ware, 322, 330, held, according to this view of such liens, that "when all the debts hold the same rank of privilege, if the property is not sufficient to fully pay all, the rule is that creditors shall be paid concurrently, each in proportion to the amount of his demand." LOWELL, J., in the case of *The Fanny*, 2 Low. 508, says: "The general rule in admiralty is that all lienholders of like degree share *pro rata* in the proceeds of the *res*, without regard to the date of their libels or suits, if all are pending together." The same view was taken by Judge HALL, in the case of *The America*, 16 Law Rep. 264, 271. So, in the cases of *The Superior*, 1 Newb. 176; *The Kate Hinchman*, 6 Biss. 367; *The General Burnside*, 3 FED. REP. 228, 236; *The Arcturus*, 18 FED. REP. 743; *The Desdemona*, 1 Swabey, 158, it was held that concurrent liens of the same rank should be paid *pro rata*, where the proceeds were insufficient to pay all, without regard to the date of the libel or the attachment of the vessel by either. Roscoe, Adm. 101. Such is the provision, also, of the French law. Code de Com. 191.

The precise question here presented has not, so far as I can ascertain, arisen of late years within this district. In the Eastern district, in the case of *The Samuel J. Christian*, 16 FED. REP. 796, the question seems to have been regarded by BENEDICT, J., as an open one. He there held that a lien for damages by collision was subject to the prior claims of material-men, and did not acquire any priority over the latter through the prior filing of the libel; and he concludes his opinion by saying that "it is unnecessary to consider the question whether, as between claims of equal rank, a prior seizure of the vessel secures priority in the distribution of the proceeds."

The recent decision in the circuit court in this district, however, in the case of *The Frank G. Fowler*, 17 FED. REP. 653, accords in principle with the several cases recently decided, to which I have above referred, holding that mere priority of attachment does not entitle to a preference. That decision seems to me plainly incompatible with the rule adopted in the cases of *The Triumph* and *The Globe*, *supra*, and with the views upon which that rule was founded. In the case of *The Fowler*, damages in favor of different lienors had accrued by two collisions upon successive voyages of the same vessel. The libel for the last collision was filed three days before the libel for the previous collision; but the attachment of the vessel by the marshal

was made upon both processes at the same time. The proceeds of sale being insufficient to pay both claims, this court held, for reasons which need not be here referred to, that the liens should be paid in the inverse order of the time at which they accrued. 8 FED. REP. 331. On appeal, BLATCHFORD, J., reversed this ruling, and held that the earlier damage should first be paid in full. Had the rule of priority depended upon the time of *filing* the libel, the judgment of the district court should have been affirmed, since the libel on the last lien was first filed; had priority depended upon the time of the *arrest* of the vessel alone, then, as the arrest upon both libels was at the same time, and the claims were of the same rank, neither had priority of the other, and the proceeds should have been divided *pro rata* between them. Neither of these courses was pursued. The decision, on the contrary, in awarding priority to the earlier lien, established for this circuit the principle, which has been repeatedly affirmed elsewhere, that a lien is a vested proprietary interest in the *res* itself, from the time when it accrues; and also that failure to enforce such a lien by immediate suit, before the vessel proceeds on another voyage, is neither laches nor sufficient, by any equity or rule of policy, to displace its priority, as a vested proprietary interest, over a subsequent lien of the same rank upon which the vessel is arrested at the same time. The former rule in this district, which made priority among liens of the same rank depend upon the date of filing the libel, or the arrest of the vessel in the proceeding to enforce it, must be regarded, therefore, as superseded; not merely because the foundation upon which that rule rested has been wholly swept away, but also because the rule adopted by the circuit court in the case of *The Frank G. Fowler* is incompatible with its longer existence.

Viewing maritime liens, therefore, as a proprietary interest in the vessel itself, and the filing of the libel and seizure of the vessel as proceedings merely to enforce a right already vested, it follows, necessarily, that, as between different lienors, any proceeds in the registry should be distributed according to the rightful priorities of the liens themselves, and not according to priority of the proceedings merely to enforce them. This rule permits all the equities of such liens to be considered and enforced, instead of subordinating these equities to a mere race of diligence.

Where the liens are of the same rank, there is often an equitable priority among them arising out of the character of the liens themselves, or the time when they accrued. A later lien for salvage is entitled to priority over a former salvage, because the last service has preserved the benefit of the former. The same is true of successive repairs of a vessel on different voyages, or on different parts of the same voyage, or of liens on successive bottomry bonds. The later improvements or advances are for the preservation of the former, or for further improvements upon the vessel; and they have, therefore, an equitable priority. As regards such liens, therefore, the rule is

that they shall be discharged in the inverse order of their dates. 3 Kent, 197; *The Eliza*, 3 Hagg. 87; *The Rhadamanthe*, 1 Dods. 201; *The Bold Buccleugh*, 7 Moore, P. C. 267; *The St. Lawrence*, 5 Prob. Div. 250; *The Fanny*, 2 Low. 508; *The Jerusalem*, 2 Gall. 345; *The America*, 16 Law Rep. 273; Roscoe, Adm. 98; *The De Smet*, 10 FED. REP. 489, note.

If the liens are of the same rank and for supplies, or materials, or services in preparation for the same voyage; or if they arise upon different bottomry bonds to different holders for advances at the same time, for the same repairs, such claims are regarded as contemporaneous and concurrent with each other, and they will be discharged *pro rata*. *The Exeter*, 1 C. Rob. 173; *The Albion*, 1 Hagg. 333; *The Desdemona*, 1 Swab. 158; *The Saracen*, 2 Wm. Rob. 458; *The Rapid Transit*, 11 FED. REP. 322, 334, 335; *The Paragon*, 1 Ware, 325, and cases first above cited. But if the liens arise from causes which are of no benefit to the ship, such as liens for damages by collision, or other torts, or negligence; and if the claims are such as cannot be treated as contemporaneous or concurrent; and if there are no equitable grounds for preferring the later liens, such as laches in the enforcement of prior ones, or other grounds of general policy,— then, as stated by STORY, J., in the case of *The Jerusalem*, "the rule would seem to apply, *qui prior est tempore, potior est jure*," (2 Gall. 345, 350;) and the liens should be satisfied in the order in which they accrue, as was held in this circuit in the case of *The Frank G. Fowler*, *supra*; Macl. Shipp. 702, 703.

As maritime liens are secret incumbrances, and tend to mislead those who subsequently trust to the ship, unless they are enforced with diligence, according to the circumstances and the existing opportunities for enforcing them, they will be deemed either abandoned through laches as against subsequent lienors or incumbrancers, or postponed to the claims of the latter, as circumstances may require. There is no fixed rule applicable to all cases determining what shall be deemed a reasonable time, or what shall be considered as laches in enforcing such liens. In ordinary ocean voyages, the preference allowed even to bottomry will be lost after a subsequent voyage, if reasonable opportunity previously existed for the arrest of the ship. *Blaine* v. *The Carter*, 4 Cranch, 332; *The Royal Arch*, 1 Swab. 269– 284; *The Rapid Transit*, 11 FED. REP. 322, 334. BETTS, J., held that the same rule should be applied to ordinary liens for supplies. *The Utility*, Blatchf. & H. 218, 225; *The Boston*, Id. 309, 327. If this rule were strictly applied to vessels which make very short and frequent voyages, of only a few days' or a few weeks' duration, and which remain in port but a short time between such trips, the effect would be practically to destroy all credit to the ship, and to defeat, therefore, the very object for which maritime liens are allowed; since every lienor would be compelled to enforce his lien almost immediately, or run the risk of having it postponed to all subsequent ones.

As respects liens arising in the course of navigation on the western lakes and rivers, where the voyages are short and frequent, the rule has been adopted to a considerable extent of making the division of claims by the successive open seasons of navigation, instead of by the separate voyages during each season. *The Buckeye State,* 1 Newb. 111; *The Dubuque,* 2 Abb. (U. S.) 20, 32; *The Hercules,* 1 Brown, Adm. 560; *The Detroit,* Id. 141; *The Athenian,* 3 FED. REP. 248; *The City of Tawas,* Id. 170; *The Arcturus,* 18 FED. REP. 743, 746. The uniform practice, therefore, has been there adopted of paying maritime liens for repairs and supplies accruing during the same season *pro rata,* without regard to the particular date or voyage at which they accrued. *The Superior,* 1 Newb. 176, 185; *The Kate Hinchman,* 6 Biss. 367; *The General Burnside,* 3 FED. REP. 228, 236; *The Athenian* and *The City of Tawas, ut supra.*

While this rule is neither strictly logical nor consistent with the theory of beneficial liens, yet, as applied to short and frequent voyages during the open season of each year, it is not merely convenient in application, but on the whole, as I think, it works out practical justice better than any other rule suggested. It occupies a middle ground, and is in effect a compromise between the theoretical right of priority of the material-man who furnishes supplies for the last voyage on the one hand, and the corresponding obligation on his part to prosecute at once in order to retain that priority which commercial policy would disallow. The season of navigation is regarded as in the nature of a single voyage; and the rules applicable to a single ocean voyage are applied, as regards liens for supplies, to the navigation of a whole season. *The City of Tawas,* 3 FED. REP. 170, 173.

As respects liens arising under the state laws, the decisions are at variance whether such liens stand upon the same footing as strictly maritime liens. While the greater number of decisions do not allow the same *status* to statutory liens, (*The Superior,* 1 Newb. 176; *The E. A. Barnard,* 2 FED. REP. 712, 721, 722, and cases there cited,) the contrary view, according to later decisions, placing both on the same footing, seems the more likely to prevail. *The General Burnside,* 3 FED. REP. 228; *The Guiding Star,* 18 FED. REP. 263.

As the best practical rule attainable in such cases, and as a rule already supported by many decisions in the western districts, I think the *pro rata* rule of distribution should be adopted here as respects beneficial liens of the same class, in the case of canal-boats and other similar craft which make short and frequent trips upon the canals and rivers, and are laid up during the winter season, when the canals and rivers are frozen over. The same considerations of convenience, justice, and policy apply to this class of cases as in navigation upon the great lakes. They cannot be applied, however, to other craft navigating about this port, making short ocean voyages, without interruption, the year round.

The towage services rendered in this case hold the same rank as claims for necessary materials and supplies, (*The City of Tawas*, 3 FED. REP. 170; *The St. Lawrence*, 5 Prob. Div. 250; *The Athenian*, 3 FED. REP. 248; *The Constancia*, 4 Notes Cas. 512; Macl. Shipp. 703,) and on the above rule the claims should be paid *pro rata.*

In one of the bills there is a credit of $130. This credit should be applied upon the earliest items. The costs of the first libel should first be paid out of the fund, and the residue should be divided *pro rata* between the claimants without regard to the dates during the season at which they accrued.

Where there are various lienors entitled to the fund, and the fund is small, no costs after the first libel, beyond necessary disbursements, should be allowed out of the fund. *The Jerusalem*, 2 Gall. 351; *The Kate Hinchman*, 6 Biss. 369; *The Guiding Star*, 18 FED. REP. 269. See *The De Smet*, 10 FED. REP. 490, note. Bonds for latent claims are not now required, except on special order, even in the English practice, (Rule 129, Coote, Adm. Pr. 205; *The Desdemona*, 1 Swab. 159;) and other parties, if any, who have liens, but have not appeared under the monition and after due publication, will be barred from the time of the final decree of distribution, (*The Saracen*, 2 Wm. Rob. 451; *The City of Tawas*, 3 FED. REP. 170.)

Since the foregoing was written I have consulted the circuit judge, and am authorized to say that a decision to the same substantial effect has been heretofore made by him in a case arising in the Northern district.