## THE THOMAS SHERLOCK.[1]

*(District Court, S. D. Ohio, W. D. August, 1884.)*

1. ADMIRALTY—MONEY ADVANCED TO PAY OFF LIENS.
   Money advanced upon the credit of the boat, to pay off claims of a maritime nature, entitled to liens either by the general maritime law or by state statute, and actually used for that purpose, are entitled to the same rank, upon distribution, as the claims which were thus paid off. And this lien is not lost by the fact that the master first obtained money of A. for such purpose, and subsequently borrowed money of B. and repaid A. B. occupies the same position which A. held.

2. SAME—STALENESS OF CLAIMS—LAPSE OF TIME—OTHER CIRCUMSTANCES.
   There is no inflexible rule in river navigation fixing the length of time that must elapse to cause a claim to become stale. But where creditors were ac-

1 Reported by J. C. Harper, Esq., of the Cincinnati bar.

quainted with the financial condition of a boat, knew her to be insolvent, had abundant opportunities of enforcing their claims, and knew that others were giving her credit, and yet continued to give her additional credit, and, upon sale and distribution of proceeds, there is not sufficient to pay all claims in full, *held*, that claims more than six months old, of such creditors, are stale.

In Admiralty.

The steamer Thomas Sherlock was enrolled in the port of Cincinnati, her registered owners being James Nichols and Ada Saville, the former being master and managing owner. The boat traded between Cincinnati and New Orleans, and was libeled June 28, 1883, at the port of Cincinnati, on the claim for seamen's wages. Intervening libels were filed in behalf of numerous creditors, among whom were Parker, Wise & Co., A. L. Saville, (father of the aforesaid Ada Saville,) and the Eureka Insurance Company, all of Cincinnati. The boat was sold and the proceeds placed in the registry of the court. The only claims disputed were those of the three intervenors already named, to-wit: Parker, Wise & Co., $2,733.40 for stores, and $1,053 for moneys advanced; A. L. Saville, $2,615 for moneys advanced; and the Eureka Insurance Company, $1,500, also for moneys advanced.

*Bateman & Harper*, for libelants and sundry intervenors.

*Moulton, Johnson & Levy, Wm. H. Jones, Lincoln & Stephens*, and *Rankin D. Jones*, for sundry intervenors.

SAGE, J., (*orally*.) This cause is before the court on the application of sundry intervenors for a final distribution of the fund in the registry, which, it seems, is not sufficient to pay all the claims in full. All the undisputed claims being clearly maritime in their character, and being shown by the testimony to be correct, are hereby allowed, and I proceed to consider the only claims which have been disputed.

The claim of Parker, Wise & Co. consists of two parts: *First*, $2,733.40 on a running account for stores furnished the boat in her home port from May 13, 1882, up to the date of her seizure, in June, 1883; *second*, $1,053, moneys advanced the boat to defray her navigating expenses. I am satisfied, from an examination of the testimony, that this claim is correct. It has been urged, however, that no lien exists in favor of the advances made by these intervenors, and the attention of the court has been drawn to the case of *The Guiding Star*, 9 FED. REP. 521, in support of this position. That case, clearly, is not applicable here. In that case the testimony showed that the advances were made for meeting what the master called "the general expenses of the boat." These expenses included a variety of claims: some maritime, and entitled to liens; others, non-maritime, and having, therefore, no liens. The testimony further showed that the parties making the advances were aware that the same were being applied to these miscellaneous claims, and the master was unable, excepting in one instance, to state how much of each advance had been

applied to pay maritime claims, and how much to non-maritime claims. For this reason the court refused to declare a lien in favor of advances made under such circumstances, but stated that had the testimony shown what specific portion of such "general expenses" was maritime, a lien to that extent would have been declared. This we consider to be the correct rule in admiralty.

In the case at bar, however, no such difficulty exists. The testimony shows specifically to what purposes the advances made by Parker, Wise & Co. were applied. These purposes were all maritime in their character, entitled under the state water-craft law (which is recognized in admiralty) to liens, and the advances made for these purposes are entitled to liens of the same rank and character as the purposes themselves. The claim of the Eureka Insurance Company is for $1,500, advanced under the following circumstances: Jesse K. Bell was the boat's agent at New Orleans for the purpose of collecting freight, and of soliciting trade for her. Capt. Nichols, in order to meet the ordinary running expenses of the boat, had, when at Cincinnati, overdrawn on Bell to the amount of $1,500. Bell, a few weeks afterwards, drew on Nichols for that amount, and the latter, in order to meet this draft, borrowed $1,500 from the Eureka Insurance Company, of Cincinnati, giving the boat's note for the same. It is contended that for a loan made under such circumstances no lien exists in admiralty. In this proposition I cannot acquiesce. The money originally obtained from the draft on Bell was used to defray the navigating expenses of the boat, and I see no reason why the money borrowed from the Eureka Insurance Company for the purpose of repaying Bell should not be entitled to a lien in admiralty.

The claim of A. L. Saville, amounting to $2,615, is mostly for advances made by him at various times to pay for repairs and supplies furnished to the boat in her home port. It is contended, however, by counsel representing some of the other intervenors, that, although Ada Saville was the registered half-owner of the Sherlock, she was but nominal owner,—her father, A. L. Saville, being the actual owner. If this contention be true, then, clearly, the claims of A. L. Saville have no standing in this court. Considerable testimony has been taken on this point, but, after a careful examination of the same, I have come to the conclusion that he was not the actual part owner of this boat. His claim is therefore allowed, so far as that point is concerned. But the objection that they are stale has been raised in connection with some of these claims. The claim of Parker, Wise & Co. for stores furnished the boat, dates, for its first item, October 25, 1882, and continues up to the boat's seizure, while the advances made by A. L. Saville cover a period of more than two years preceding her seizure. No one will contend that persons can, for an indefinite period, credit a boat, without enforcing their claims when they have opportunity to do so, and thus allow liens to so accumulate as to de-

prive subsequent creditors of all but nominal security for such credit as they may give the boat. Some limit should be adopted, and, having examined the cases bearing on this point, I have concluded that, so far as the claims of Parker, Wise & Co. and of A. L. Saville are concerned, all portions of the same covering advances made and stores furnished prior to December 1, 1882, which extend back about six months from the date of the boat's seizure, should be rejected as stale. The sum now in the registry of the court not being sufficient to pay all claims in full, this ruling will result, according to my calculation, in excluding about $170 from the claim of Parker, Wise Co., and about $1,400 from that of A. L. Saville.

*Mr. Wm. H. Jones.* "Am I to understand your honor as laying down a general rule for this court that hereafter all maritime claims which have accrued more than six months previous to the libeling of a boat shall be declared stale, and that subsequent claims shall have priority of rank over the same?"

*The Court.* "No; it is not my intention to make that period the limit in all cases. In the case at bar the testimony satisfies me that Parker, Wise & Co. and A. L. Saville, during all the time they had dealings with the Sherlock, were acquainted with her financial condition. The boat traded between this city and New Orleans, and was frequently here. These two intervenors, therefore, had abundant opportunity to enforce their claims. Although they knew that the boat was practically insolvent, they took no steps whatever looking toward the enforcement of their claims, but continued to give the boat additional credit, knowing that others were doing the same thing. Under such circumstances, claims more than six months old should be declared stale. There may be cases in which a longer time would be recognized. It should depend upon the circumstances of the particular case."

---

As to money advanced, see *The Guiding Star*, (on appeal,) 18 FED. REP. 263. As to claims become stale, see *Coburn* v. *Factors' & Traders' Ins. Co.* 20 FED. REP. 644; *The Arcturus*, 18 FED. REP. 743, 746.—[REP.