THE MORNING STAR (three cases).

(District Court, W. D. Washington, N. D. September 26, 1924.)

Nos. 8711, 8712, 8726.

1. **Seamen ⧢27—Half owner may not assert lien against vessel as against unpaid services of seamen.**

Half owner of vessel may not assert lien against it for services as master and mechanic, as against unpaid wages of seamen.

2. **Work and labor ⧢7(1)—Rendition of services by member of family does not imply contract to pay.**

The rendition of services by one member of family living as one household does not imply contract to pay.

3. **Pilots ⧢13—Pilot held not entitled to mariner's lien as watchman when vessel was not in service.**

One asserting lien against vessel for services as pilot *held* not entitled to lien for period when vessel was laid up and he acted only as watchman or shipkeeper.

4. **Maritime liens ⧢37—Ninety-day local harbor rule held inapplicable.**

Ninety-day Seattle harbor rule *held* inapplicable to liens against vessel which had been operating between Seattle and Vancouver, British Columbia.

5. **Seamen ⧢27—Seaman held entitled to double pay as penalty, but not as against other lienors, where diligent in making demand.**

Seaman *held* entitled to double pay as penalty under Comp. St. § 8320, but not as against other lien claimants for period prior to filing of libel, where without excuse he delayed assertion of his claim and demand for double pay.

6. **Maritime liens ⧢37—Secret liens, to retain priority, must be enforced with reasonable diligence.**

Secret liens are not encouraged, and, to retain priority, must be enforced with reasonable diligence.

7. **Pilots ⧢12—Seamen ⧢26—Mate and pilot held guilty of laches, precluding assertion of claims more than six months old.**

Where father and brother-in-law of master and part owner of vessel, who could reasonably be presumed to be acquainted with its financial condition, took no steps to enforce claims for services as mate and pilot, thus encouraging additional credit, *held*, they were precluded by laches from asserting claims more than six months old.

In admiralty. Libels by William Gilmore, by the Standard Oil Company, and by the United States against the American steamship Morning Star, her engines and boilers, tackle, apparel, and furniture. On hearing of proofs of seamen's wage claims. Claims determined.

Claims against the vessel are asserted as follows: William Gilmore, for a balance of $258 as marine engineer from the 16th of October, 1923, to the 13th of June, 1924, at an agreed wage of $160 per month. He also claims two days' pay for each day after June 13, 1924, on which date he was discharged. He brought this libel July 29,

1924. J. D. Gilmore, for $1,735 as master from December 6, 1923, to July 21, 1924, at $6.60 per day, and as mechanic from October 17, 1923, to December 24, 1923, at $5 per day. He was half owner of the vessel. A. W. Smith, for $615.62 as mate from December 26, 1923, to July 21, 1924. George Ott, for $33 unpaid wages as second mate from July 8 to July 21, 1924. James Gilmore, for a balance of $3,410, for services as "pilot and shipkeeper" from June 22, 1922, to July 1, 1924, a total of $3,810, of which $400 has been paid. He is 76 years of age, and the father of J. D. Gilmore, the master. During the time of his employment the boat was tied up for at least 16 months, during which time he was a watchman on the vessel. John Crotty, for $132, balance for services as cook from May 17 to July 21, 1924. Charles Holmgren, for $75.50 as chief engineer from July 6 to July 20, 1924. Louis Young asserts a claim for $9.88, balance of wages due as deck hand from July 9 to July 21, 1924. On stipulation the seamen's wage claims are being determined, and cause continued as to other asserted claims.

James Kiefer, of Seattle, Wash., for libelant Gilmore.

Howard H. Startzman, of Seattle, Wash., for intervening libelants Gilmore, Smith, Ott, Crotty, Holmgren, and Young.

Huffer, Hayden & Bucey, of Seattle, Wash., for intervener Frampton.

Battle, Hulbert, Gates & Helsell, of Seattle, Wash., for libelant Standard Oil Co.

Thomas P. Revelle, U. S. Atty., and John A. Frater, Asst. U. S. Atty., both of Seattle, Wash.

NETERER, District Judge. [1] J. D. Gilmore, as half owner, may not assert a lien against the vessel as against the unpaid wages of the seamen.

[2, 3] James Gilmore is the holder of a master's and pilot's license, issued within 2 years. From his appearance it is doubtful whether a stranger would employ him as a master or pilot. The testimony shows, however, that he was at the wheel on several occasions. He testified, as did the master, J. D. Gilmore, that an express contract was entered into with relation to his employment, and that the services were faithfully performed, for which he has only been paid $400. When service is rendered by a member of the family living as one household, the rendering of services alone does not imply a contract to pay. Disbrow v. Durand,

54 N. J. Law, 343, 24 Atl. 545, 33 Am. St. Rep. 678. J. D. Gilmore and James Gilmore at times were living together. James Gilmore testified his home was with his daughter. As watchman of the vessel he may not assert a mariner's lien. The Fortuna (D. C.) 206 Fed. 573. I think 16 months should be deducted from the period of his employment as not a maritime service. The $400 paid, I think upon this record, should be credited to the nonmarine service.

[4] The claims will be allowed as hereinafter indicated. The 90-day local harbor rule (The Edith [D. C.] 217 Fed. 300, and The Sea Foam [D. C.] 243 Fed. 929) has no application. They apply to Seattle harbor (Elliott Bay) and Puget Sound. The Morning Star was operating between Seattle, on Puget Sound, in the United States, and Vancouver, on Burrard Inlet, British Columbia.

[5] Double pay, as penalty (section 8320, Comp. Stat.), should be allowed William Gilmore. Gerber v. Spencer (C. C. A.) 278 Fed. 886. The last cited case was tried before the writer at San Francisco. The Nika (D. C.) 287 Fed. 717, is not decisive here. There are equities, however, in favor of the objecting creditors. I think a seaman on discharge may not wait indefinitely to assert his claim and demand double pay; he should exercise diligence in asserting it, at least as against other lien claimants. William Gilmore could have asserted his claim 24 hours after discharge and refusal to pay June 13, 1924 (section 8320, supra), and will not be granted a lien as against the other claimants for double pay prior to filing this libel July 29, 1924; the fund in the registry of the court being insufficient to pay all asserted liens.

[6] The question of laches asserted by the intervening lien claimants other than seamen's wage claimants suggests the maxim "sic utere tuo ut alienum non lædas" —"so use your own as not to injure another's property." The vessel was making weekly trips between Seattle and Vancouver. Secret liens are not encouraged, except as they may be enforced in good conscience. While there is no fixed time applicable to all cases to constitute laches, the general rule is that liens, to retain priority, must be enforced with reasonable diligence. The Young America (D. C.) 30 Fed. 789. The J. W. Tucker (D. C.) 20 Fed. 129. The Thomas Sherlock (D. C.) 22 Fed. 253. To permit relations of an owner of a ship, or persons familiar with the earning capaci-

ty of the vessel, to accumulate secret liens, encouraging credit for the vessel for any considerable time, would be very harmful to innocent third persons, and encourage injustice.

[7] Equity and good conscience clearly suggest a comparatively brief period of inactivity to constitute laches sufficient to postpone the prior liens in favor of other lienors. James Gilmore, the father, and Smith, the brother-in-law, of the master and part owner, in the absence of contrary showing, could reasonably be presumed to have been acquainted with the financial condition of the ship, and took no steps looking to the enforcement of their claims—encouraged additional credit. Under such circumstances, I think justice demands that six months old claims should be declared "stale." The Young America, supra; The Thomas Sherlock, supra.

Decree accordingly.